Patrick J. McMAHON; Walter Imhoff, Jr.; John A. Cornett; Vincent P. Dennis; Leo Dwulit; Anthony J. Iarussi; Fred Dehren; James T. Kyle; Thomas F. Lordeon; Raymond Riddle; Donald Rottman; and Frank Vento

v.

Putnam B. McDOWELL; W.C. Berg, Jr.; Roger F. Hutchinson; A. Limi; D.E. Huffner; W.W. Joseph; J.D. Iverson; R.J. Dobbs, Jr.; S.R. Rackoff; R.W. Smith; D.R. Andrews; E.C. Quick; D.J. Bruback; and J.F. Ries Mesta Machine Co.

Appeal of Patrick J. McMAHON; Walter Imhoff, Jr.; John A. Cornetta; Vincent P. Dennis; Leo Dwulit; Anthony J. Iarussi; Fred Kehren; James T. Kyle; Thomas F. Lordeon; Raymond Riddle; Donald Rottman; Frank Vento; Charles B. Duke; Edward Hudak; Wilbur G. Beamer; Dennis Mangan; Charles Patton; Stanley Kasian; John Rhule; and Edward Zych, Appellants.

No. 85–3570.

United States Court of Appeals,
Third Circuit.

Argued April 17, 1986.
Decided June 24, 1986.

John M. Silvestri, Stanley E. Levine, Lindsley Love (argued), Robert O. Lampl, Janice L. Morison, Pittsburgh, Pa., for Appellants.

Dennis R. Yeager, Jonathan Lang (argued), Yeager & Lang, New York City, Frederick N. Egler, Avrum Levicoff, Egler, Anstandig, Garrett & Riley, Pittsburgh, Pa., for Director and Officer Appellees.

Paul M. Singer, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for Appellee Mestek, Inc. (formerly known as Mesta Mach. Co.).

Before ADAMS, GIBBONS and STAPLETON, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

This action was brought by former employees of the Mesta Machine Company ("Mesta") against Mesta and certain of its former officers and directors. The plaintiffs seek wages, pension contributions, and fringe benefits allegedly owed to them under the Employee Retirement Income Security Act of 1974 ("ERISA"), Pub.L. 93–406, 88 Stat. 832 (codified as amended in scattered sections of 26 and 29 U.S.C.), the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa.Cons.Stat. § 260.1 *et seq.* (Supp.1985), and state contract law. The suit was initially filed in state court, but defendants removed it to federal court based upon the ERISA claim, 29 U.S.C. § 1132 and 28 U.S.C. § 1441(a).

The parties, after stipulating to certain facts, filed cross-motions for summary judgment. According to these stipulations, the following claims are still at issue in this case:

—Claims of salaried workers for unpaid wages under state law

—Claims of hourly and salaried workers for unpaid fringe benefits under state law [1]

---

1. Plaintiffs' complaint states no ERISA claim with respect to the fringe benefits plans. The parties defined "fringe benefits" for this litiga-tion as "those benefits, other than wages and pension benefits, payable to or on behalf of the hourly workers and or the salaried workers ...

—Claims of hourly and salaried workers for unpaid pension plan contributions under ERISA and state law.

The defendant officers and directors asserted, *inter alia,* that ERISA had preempted plaintiffs' state law claims for pension contributions and fringe benefits and that no ERISA violation had been shown. The district court agreed with defendants as to the preemption of state law and the absence of an ERISA violation. The court then exercised its discretion to refrain from hearing plaintiffs' remaining pendent state claims and also did not resolve Mesta's claim that its discharge in bankruptcy insulated it from liability. The plaintiffs appealed these rulings.

This Court has plenary review upon the appeal from the grant of summary judgment upon stipulated facts. *Solomon v. Klein,* 770 F.2d 352, 353 (3d Cir.1985); *Goodman v. Mead Johnson & Company,* 534 F.2d 566, 573–74 (3d Cir.1976), *cert. denied* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

II

A. *The Pension Plans*

Mesta maintained separate pension plans for its hourly and salaried workers. These plans were non-contributory, defined-benefit plans, under which the employees were to receive pensions in specified amounts after retirement and upon reaching a certain age. The terms of the hourly workers' plan were reached through collective bargaining while those of the salaried workers' plan were set by Mesta alone. The

required level of contribution to both plans was determined by reference to ERISA's funding requirements and the level of benefits promised to the employees. Both pension plans were approved by the Internal Revenue Service ("IRS") as qualified under under 26 U.S.C. § 401(a), and were employee pension benefit plans and pension plans within the meaning of those terms as defined by ERISA Section 3(2)(A)(i), 29 U.S.C. § 1002(2)(A)(i).

Mesta's annual pension contributions were due by September 15 of the year following the plan year to which the contributions applied. Until plan year 1980, Mesta contributed the amounts recommended by the plans' actuaries and was in compliance with the plans and ERISA. However, between 1977 and 1981, Mesta's financial condition took a severe turn for the worse. During that period, its operating results dropped from an $8.8 million profit to a $23.9 million loss. At the same time, the notes payable by Mesta to its banks increased from $1.3 million to $25 million, and Mesta defaulted on several of these notes. As a condition of the banks' waiver of default on notes and the continued extension of credit, in March 1981, Mesta and the banks entered into a revolving credit agreement. Under this agreement, Mesta pledged all its assets, including real estate, plants, equipment, inventory, accounts receivable, stock in subsidiaries, and most contract rights, to the banks.

As a result of its financial difficulties, in 1981, when the 1980 plan year contributions were due, Mesta "did not have cash

---

but limited as follows: vacation, vacation bonus, savings and vacation benefits, severance benefits and supplemental unemployment benefits." Unlike the pension benefits, Mesta paid for some fringe benefits out of operating revenues, accounting for them as operating expenses. All fringe benefits for the salaried employees and the hourly employees affiliated with Local 2178 of the International Association of Machinists and Aerospace Workers were paid for in this manner. The savings and vacation benefits, and supplemental unemployment benefits for the other hourly employees were also paid out of operating revenues. However, the vacation benefits, vacation bonus, and sever-

ance benefits for these other hourly employees were paid out of the pension trusts of the pension plan maintained for those workers.

The district court, in granting summary judgment for defendants, stated that all the pension and fringe benefits plans "appear[ ] [to] ... come under the scope of ERISA." The plaintiffs do not contest that ruling and we express no opinion on the district court's observation regarding ERISA coverage of the fringe benefits. *Compare California Hospital Assoc. v. Henning,* 770 F.2d 856 (9th Cir.1985) (upholding 29 C.F.R. § 2510.3–1(b)(3)): *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1502 (9th Cir.1985).

sufficient to make [them] and, at the same time, pay all of the other operating expenses of its business and retire its debt to the Banks as required by the Revolving Credit Agreement."

Mesta therefore applied to the IRS for a waiver of the minimum funding standards pursuant to 29 U.S.C. § 1083. The IRS granted this request for plan year 1980. In 1982, pursuant to the agreement with the IRS, Mesta paid the necessary installments of the contributions that had been waived for the 1980 plan year. Mesta later applied to the IRS for a second waiver, this time for the 1981 plan year. This application was still pending when Mesta sought protection in bankruptcy in February 1983. Following Mesta's Chapter Eleven filing, the IRS denied the application, but by that time the automatic stay provisions of the bankruptcy code were in effect. 11 U.S.C. § 362. Mesta has made no further pension plan contributions.

In September 1983, Mesta sought to terminate the pension plans. With the approval of the Pension Benefit Guaranty Corporation ("PBGC"), the plans were terminated as of June 16, 1983. When the pension plans were terminated, the plans did not have sufficient assets to pay all beneficiaries their full pension benefits. PBGC, as successor trustee of the plans, took custody of all their assets and filed claims against Mesta to recover contributions owed by Mesta to the plans. In Mesta's bankruptcy reorganization, PBGC acquired various assets of Mesta on behalf of the pension plans.

PBGC continues as successor trustee to the pension plans and is paying the former Mesta employees the portion of their vested benefits that is guaranteed by ERISA and the plans.

## B. *Preemption of State Law by ERISA*

Plaintiffs seek unpaid wages, fringe benefits, and pension plan contributions from the individual defendants pursuant to state common-law and the WPCL, 43 Pa.Stat. Ann. §§ 260.3(a) & (b) (Supp.1985), quoted in the margin.[2] The WPCL imposes liquidated damages and criminal liability for failing to make such payments. 43 Pa. Stat.Ann. §§ 260.10 & 260.11a (Supp.1985), and authorizes any employee to sue to recover owed wages and benefits. 43 Pa.S. § 260.9a (Supp.1985). The plaintiffs argue that their "claims for wages, vacation pay, severance allowance, fringe benefits and pension contributions are damages clearly described by the WPCL, and the directors and officers as senior management corporate employees have the personal statutory responsibility to make such wage, fringe benefit and wage supplement payments." The defendants argued, and the district court agreed, that the plaintiffs' state law claims for pension and fringe benefits, including the WPCL claims for such benefits, were preempted by ERISA.

■ ERISA contains an explicit and broad preemption provision. ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in § 1003(a) of this title and not exempt under § 1003(b) of this title." Section 514(a), 29 U.S.C. § 1144(a).[3] By this language, Con-

---

**2.** The WPCL reads, in relevant part:

Every employer shall pay all wages, other than fringe benefits and wage supplements, due to his employees on regular paydays designated in advance by the employer...

Every employer who ... agrees to pay or provide fringe benefits or wage supplements, must remit the deductions or pay or provide the fringe benefits or wage supplements ...

43 Pa.Stat. § 260.3(a) & (b) (Supp.1985). The WPCL defines "wages" and "fringe benefits" broadly: "Wages" include

all earnings of an employee ... [and] also includes fringe benefits or wage supplements whether payable by the employer from his

funds or from amounts withheld from the employees' pay by the employer.... [Fringe benefits include] all monetary employer payments to provide benefits *under any employee benefit plan, as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974,* 29 U.S.C. § 1001 *et seq.,* as well as separation, vacation, holiday, or guaranteed pay ..."

Section 260.2a. (emphasis added)

**3.** The plaintiffs do not argue that any of the specific exceptions to Section 514(a) are applicable here and we therefore express no opinion on this subject.

gress meant to establish pension plan regulation as an exclusively federal concern. *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). It sought to reserve to itself the "sole power to regulate" the field of employee benefit plans, *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 99, 103 S.Ct. 2890, 2901, 77 L.Ed.2d 490 (1983). Accordingly, Congress intended the preemption provision to have a scope as broad as its language suggests. *Shaw*, 463 U.S. at 98, 103 S.Ct. at 2900. The Supreme Court has recently discussed the proper interpretation of this language:

> The phrase "relate to" [is] given its broad common-sense meaning, such that a state law "relate[s] to" a benefit plan "in the normal sense of the phrase, if it has a connection with or reference to such a plan." [*Shaw*, 463 U.S. at 97, 103 S.Ct. at 2900]. The preemption provision was intended to displace all state laws that fall within its sphere, even including state laws *that are consistent with ERISA's substantive requirements.* "[E]ven indirect state action bearing on private pensions may encroach upon the area of exclusive federal concern."

*Metropolitan Life Insurance Co. v. Mass.*, — U.S. —, —, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985) (emphasis added and some citations omitted). In *Shaw*, the Supreme Court turned to Black's Law Dictionary 1158 (5th ed.1979) for its a common-sense definition of "relate": "To stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *Shaw*, 463 U.S. at 97 n. 16, 103 S.Ct. at 2900 n. 16.

The WPCL and other state law claims are therefore preempted—insofar as they authorize the recovery of the pension contributions and fringe benefits from the individual defendants—if they "relate" to the Mesta employee benefit plans.

We believe that the WPCL, as employed by plaintiffs, plainly relates to the Mesta pension plans and therefore is preempted by Section 514(a), 29 U.S.C. § 1144(a). Insofar as the WPCL authorizes the liability

of Mesta or of its directors and officers for unpaid employee benefit plan obligations, it obviously relates, refers, and pertains to the underlying employee benefit plans. The WPCL itself explicitly includes ERISA plans within its scope. 43 Pa.Stat.Ann. § 260.2a (1985 Supp.). Indeed, the very existence of liability for unpaid pension contributions is, in the first instance, a result of the federal scheme. Plaintiffs would be able to determine the amount of any recovery under the WPCL only by reference to the benefit plans and the provisions of ERISA.

The plaintiffs implicitly recognize the close relation between the ERISA-governed benefit plans and the remedy they seek under state law. In their principal brief, plaintiffs assert that the WPCL is consistent with and even "supplements ERISA, ... making the payment of employee creditors a priority over the payment of other creditors." This argument does not help plaintiffs, for as the Supreme Court has observed, the absence of a direct conflict will not save a state law that relates to a covered employee benefit plan. *Metropolitan Life; Shaw.*

Moreover, the WPCL, as invoked by plaintiffs, does not merely relate to Mesta's pension plans, it competes with the mechanism that Congress carefully established in ERISA itself. Congress set in place particular processes for the recovery of delinquent contributions:

> [ERISA] places the obligation for funding and the penalty for underfunding on the person on whom it belongs—namely, the employer. This is achieved by imposing an excise tax where the employer fails to meet the funding standards, which starts out at a relatively modest level and increases sharply where there is continued failure to make the indicated contributions. More specifically, if an employer fails to contribute sufficient amounts to meet the new funding requirements, he will be subject to a nondeductible excise tax of 5 percent per year on the amount of the underfunding for any year. If the employer fails to make

up the underfunding by 90 days after original notification by the Internal Revenue Service, ... then the employer is subject to a second level excise tax amounting to 100 percent of the underfunding....

S.Rep. No. 93–383, 93d Cong., 1st Sess. 24, *reprinted in* 1974 U.S.Code Cong. & Ad. News at 4639, 4890, 4909–10, *and in* 1 Legislative History of the Employee Retirement Income Security Act of 1974, at 1063, 1092 (1976) (hereinafter cited as Legislative History).

If an employer nonetheless refuses to make the required plan contributions, ERISA also permits a civil action to be brought in order to enforce the provisions of the statute and of the plan. Sections 501(a) and 4068(d), 29 U.S.C. §§ 1132(a), 1368(d).

Furthermore, the statute, Sections 4001–4068, 29 U.S.C. §§ 1301–1368, and the regulations, 29 C.F.R. §§ 2615–2623, institute a comprehensive framework designed to accommodate the different policies implicated when an employer seeks to terminate a single employer plan that has not been fully funded. *See Nachman Corp. v. PBGC*, 446 U.S. 359, 374–75, 100 S.Ct. 1723, 1732–33, 64 L.Ed.2d 354 (1980); S.Rep. No. 93–383, 93d Cong., 1st Sess. 7–8, 66–71, 78–93, *reprinted in* 1974 U.S. Code Cong. & Ad.News at 4895–96, 4950–55, 4962–77 *and in* 1 Legislative History at 1075–76, 1134–39, 1146–61. This scheme, which includes plan termination insurance and gives the plan preferred status as a creditor, does not contemplate that the substantial liability imposed upon a terminating employer will be supplemented by private state law actions. Section 4068, 29 U.S.C. § 1368.[4] Had Congress intended to impose the additional liability sought by plaintiff, it surely knew how to do so.

However, it chose not to authorize this sort of personal liability. *See Solomon v. Klein*, 770 F.2d 352, 354 (3d Cir.1985).

We find additional support for our analysis in the explanation of Senator Harrison Williams, one of ERISA's principal sponsors: "State laws compelling disclosure from private welfare or pension plans, imposing fiduciary requirements on such plans, imposing criminal penalties on failure to contribute to plans—unless a criminal statute of general application—establishing state termination insurance programs, et cetera, will be superseded." (Sen. Debate, August 22, 1974; Legis.Hist. at 4770–71).[5]

The conclusion is inescapable that the WPCL relates to the Mesta benefit plans in a way that Congress sought to foreclose by Section 514(a), 29 U.S.C. § 1144(a). Plaintiffs are here attempting to avoid ERISA's mechanisms for enforcing benefit plan contributions and to substitute instead a state regulation that circumvents the scheme carefully devised by Congress. This they may not do. *Gilbert v. Burlington Industries*, 765 F.2d 320, 327 (2d Cir.1985), *appeal pending* — U.S. ——, 106 S.Ct. 378, 88 L.Ed.2d 332 (1986); *Holland v. Burlington Industries*, 772 F.2d 1140, 1147 (4th Cir.1985).[6]

Plaintiffs argue that *Carpenters Health & Welfare Fund v. Ambrose*, 727 F.2d 279 (3d Cir.1983), precludes this conclusion. *Ambrose* involved a suit for delinquent pension funds contributions. The fund trustees sued under Section 301 of the LMRA, 29 U.S.C. § 185(a), seeking to enforce related provisions of a collective bargaining agreement, and under the WPCL to recover the delinquencies. In their briefs before this court, the trustees urged that the WPCL was not preempted by ERISA because there was no inconsistency

---

**4.** In fact, in the case at bar, PBGC acquired various assets of Mesta pursuant to claims it filed on behalf of the benefit plans during the bankruptcy proceedings.

**5.** As noted at p. 7, *supra*, the WPCL provides for criminal penalties for the failure to contribute to employee benefit plans.

**6.** To the extent that plaintiffs are seeking, under Pennsylvania common law, to recoup unpaid pension plan contributions or employee benefit payments to which they claim entitlement, these claims also are preempted by Section 514(a).

between the provisions of the two statutes. The *Ambrose* court dismissed in a footnote the contention that ERISA preempted the WPCL as "without merit," 727 F.2d at 282 n. 5. It found "the Ambroses personally liable under the WPCL for the delinquent pension benefit contributions." *Id.* at 283.

When *Ambrose* was submitted to this court, the Supreme Court's decision in *Shaw* had not yet been announced and there is no reference to it in the *Ambrose* opinion. Moreover, subsequent to the issuance of the *Ambrose* opinion, the Supreme Court decided *Metropolitan Life Insurance*, 105 S.Ct. 2380 (1985). *Shaw* and *Metropolitan Life* make it very clear that state laws relating to a covered plan, even those that are arguably consistent with the goals of ERISA, are preempted by Section 514(a), 29 U.S.C. § 1144(a). We do not believe that this aspect of *Ambrose* can survive *Shaw* and *Metropolitan Life.* While a panel of this court is bound to follow the decision of an earlier panel in the absence of intervening Supreme Court precedents mandating a different result, IOP Chapter VIII Section C, "as an inferior court in the federal hierarchy, we are, of course, compelled to apply the law announced by the Supreme Court as we find it on the date of our decision." *United States v. City of Philadelphia*, 644 F.2d 187, 192 n. 3 (3d Cir.1980). As we have observed, we "may not countenance the continued application in this circuit of a rule, even of our own devising, which is patently inconsistent with the Supreme Court's pronouncements." *Cox v. Dravo Corporation*, 517 F.2d 620, 627 (3d Cir.), *cert. denied* 423 U.S. 1020, 96 S.Ct. 457, 46 L.Ed.2d 397 (1975). *See also United States v. Thevis*, 665 F.2d 616, 626 (5th Cir.), *cert. denied in* 456 U.S. 1108, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982), *and in* 458 U.S. 1109, 102 S.Ct. 3489, 73 L.Ed.2d 1370 (1982), *and in* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982) ("although ordinarily a panel must adhere to prior decisions of this court, our first duty is to follow the dictates of the United States Supreme Court."); *Ralpho v. Bell*, 569 F.2d 607, 629 (D.C.Cir.1977).

The district court's holding that plaintiffs' state law claims for fringe benefits and pension contributions are preempted by ERISA is correct and must be affirmed.

### C. *Breach of Fiduciary Duty*

The plaintiffs' ERISA claim seeks to impose liability on the pension plan fiduciaries for their failure to collect delinquent pension plan contributions and on Mesta for its failure to make those contributions.[7] Plaintiffs allege that this was a breach of the fiduciaries' duties under Section 409, 29 U.S.C. § 1109.[8] The parties' stipulation of facts poses the sole issue relevant to the question of breach of fiduciary duties:

> As to any director or officer who may have been a fiduciary ... the sole issue as to plaintiffs' claims that the directors and officers breached fiduciary duties under ERISA or otherwise violated ERISA is whether or not any director or officer breached such a duty in failing to collect pension contributions or in failing to cause pension contributions to be collected by or for the pension trusts.

Plaintiffs do not assert that the fiduciaries engaged in self dealing or prohibited transactions within the meaning of Sections 404 and 406, 29 U.S.C. §§ 1104, 1106, or that Mesta's application for the Section 303

---

**7.** Plaintiffs did not raise an ERISA claim for unpaid fringe benefits in the district court. Plaintiffs stipulated that such benefits were *not* "employee welfare benefit plans" within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1). Therefore, we do not address plaintiffs' belated contention, made at oral argument before this court, that they are making a claim for fringe benefits under ERISA. *Brown v. Sielaff*, 474 F.2d 826, 828 (3d Cir.1973); 16 C. Wright, A.

Miller, E. Cooper & E. Gressman, *Federal Practice and Procedure*, § 3974, at 421 (1977).

**8.** Section 409 states that "any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from such breach ..."

waiver, 29 U.S.C. § 1083, formed the basis for any violation. Nor do plaintiffs assert that the fiduciaries' restraint was motivated by bad faith.[9]

The district court believed that the defendants' failure "to collect certain pension contributions [does not] constitute a breach ... since the defendants' alleged failure was pursuant to the provisions of § 1083 of ERISA." The plaintiffs except to this analysis and argue that while a Section 303 waiver may prevent a plan from losing its qualified status under the Internal Revenue Code, it "did not excuse the alleged obligations of Mesta and/or the Directors and officers to make Pension Contributions to the Pension Trusts".

Plaintiffs attempt to characterize their federal claim against Mesta and the individual defendants as one brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). However, actions brought under Section 502(a)(1)(B) are personal in nature and "seek to declare the plaintiff beneficiary's rights under the plan, to recover benefits personally due him, or to enforce his personal rights." *Livolsi v. R.A.M. Construction Company*, 728 F.2d 600, 602 (3d Cir.1984).

■ As the Supreme Court has held, a recovery under Section 409 for damages for breach of fiduciary duty does not go to any individual plan participant or beneficiary, but inures to the benefit of the plan as a whole. *Massachusetts Mutual Life Insurance Company v. Russell*, —— U.S. ——, ——, 105 S.Ct. 3085, 3089, 87 L.Ed.2d 96 (1985). Section 409 does not authorize a private right of action for compensatory relief. *Id.* Since plaintiffs' sole ERISA claim is that the fiduciaries breached their fiduciary obligations, which is a violation of Section 409, they cannot characterize their

ERISA claim as one to recover benefits due to them. Accordingly, this claim is not appropriately brought under Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

However, this suit is proper under ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2). Section 502(a)(2) authorizes a beneficiary of a benefit plan to bring an action against a plan fiduciary who has violated the fiduciary duty requirements of Sections 409 and 404. *Massachusetts Mutual*, —— U.S. at ——, 105 S.Ct. at 3089. Therefore, these plaintiffs have standing under 29 U.S.C. § 1132(a)(2) to assert that the fiduciaries of their pension plans breached their fiduciary duties.

■ Furthermore, if a beneficiary or participant can show that the plan fiduciaries breached their duties, he may also be able to recover damages, for the benefit of the plan, directly from the employer. *Struble v. New Jersey Brewery Employees Welfare Trust Fund*, 732 F.2d 325 (3d Cir. 1984). However, the employer cannot be sued by the participants or beneficiaries under Section 502(a)(2), 29 U.S.C. § 1132(a)(2), without first establishing that the fiduciaries breached their fiduciary duties. "[T]he beneficiaries may not maintain a derivative action against the Employers unless they first show a fiduciary breach in the Trustees' decision ..." *Id.* at 338.

Therefore, to recover damages from the employer, Mesta, or from the pension plans' fiduciaries, plaintiffs must first demonstrate that the fiduciaries have breached their fiduciary duties. *Struble*, 732 F.2d at 336–37.

Section 404, 29 U.S.C. § 1104, imposes the applicable standard of behavior where, as here, a plaintiff charges that plan fiduciaries have not acted for the sole benefit of plan participants and beneficiaries. *Struble*, 732 F.2d at 333–34. Section 404(a)(1)(A) requires the plan fiduciary to act "solely in the interest" of the partici-

---

**9.** At oral argument before this court the plaintiffs sought to add an allegation that by refusing to collect the plan contributions the fiduciaries had extended credit to Mesta in violation of the prohibited transactions rules. We, of course, express no opinion on this issue.

pants and beneficiaries and for the "exclusive purpose" of providing benefits to them and defraying the costs of running the plan. Moreover, in pursuit of these ends, the fiduciary must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." Section 404(a)(1)(B).

■ This standard, based upon the common-law conception of a trustee, is quite rigorous. *See* Raymond, *ERISA Trusts and Tender Offers*, 13 Sec.Reg.L.Rev. 253, 257–59 (1985). It requires a trustee to "exclude all selfish interest and all consideration of the interests of third persons." 7 G. Bogert, The Law of Trusts and Trustees § 543 at 197–98 (2d rev.ed 1978). Although ERISA's fiduciary duty requirements are based on the common law of trusts, the federal scheme departs from the common-law rule in at least one significant area. ERISA does not absolutely bar a plan fiduciary from simultaneously serving as a director or officer of the employer or of another "party in interest." Section 408(c)(3), 29 U.S.C. § 1108(c)(3); *see* Raymond, 13 Sec.Reg.L.Rev., at 253. Accordingly, no ERISA violation arises solely because the plan fiduciaries also were employed by Mesta. However, while a plan fiduciary does not violate ERISA merely by being associated also with the employer, Section 408 does not sanction any derogation from the strict requirements of Section 404. *See Sutton v. National Steel Corp.*, 724 F.2d 406 (4th Cir.1983), *cert. denied* 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984).

■ Moreover, fiduciaries have a Section 404 obligation "to avoid placing themselves in a position where their acts as directors or officers of the corporation will prevent their functioning with the complete loyalty to participants demanded of them as trustees." *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir.) *cert. denied* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982). This duty may, in some circumstances, require the fiduciary to step aside in favor of a neutral referee, or at the least, to conduct an explicit inquiry into the potential for a conflict of interest. *See Id.;* Raymond, 13 Sec.Reg.L.Rev. at 272–73. However, plaintiffs have stipulated that the only issue with regard to their claim that the trustees breached their fiduciary duties concerns the failure to collect pension loan payments. There is thus no allegation that the trustees breached their duties by failing to investigate alternative courses of action or to seek the guidance of a neutral third party.

■ Under traditional trust law doctrine, incorporated into ERISA, if a "trustee holds in trust a contract right against a third person and the trustee improperly refuses to bring an action to enforce the contract, the beneficiaries can maintain a suit ... against the trustee joining the obligor as co-defendant." 4 A. Scott, *Law of Trusts* § 282.1 at 2339 (3d ed.1967) (citation omitted); *See Struble*, 732 F.2d at 336–37. However, if under the circumstances it is prudent to refrain from bringing an action, so that the trustee does not violate his duty in so refraining, the beneficiaries can neither compel him to sue nor can they themselves maintain a suit against the third party. Scott, *supra.* Furthermore, although "a trustee should not without sufficient reason fail to take steps to enforce a claim, yet he can properly abandon a claim where it appears that a suit would be futile ... and there is no other method of enforcing the claim." 3 Scott § 192 (footnote omitted). We believe that, on the stipulated facts of the case at bar, the plan fiduciaries here have not been shown to have acted imprudently in refraining from seeking to collect the pension plan contributions.

ERISA sets minimum funding standards for anticipated pension liabilities incurred by employees' service prior to ERISA's effective date of January 1, 1975. These liabilities are known as "past service liabilities" and employers generally have up to forty years fully to fund them. Section 302(b), 29 U.S.C. § 1082. ERISA also im-

poses an obligation to fund currently arising pension obligations. Under these provisions of the statute and the terms of the pension plans, Mesta was to make payments to the pension plans sufficient to fund currently accruing benefits thereunder and to bring unfunded past service liabilities up to date over a thirty-year time period. Section 302(b)(2)(B)(ii), 29 U.S.C. § 1082(b)(2)(B)(ii).

Section 303(a), 29 U.S.C. § 1083(a), permits a financially troubled employer, upon application to the IRS, to obtain a waiver of its required level of contribution to a benefit plan. *See* 26 U.S.C. § 412(d). A variance is authorized only in "situations where the employer did not foresee and could not reasonably have been expected to foresee ... the event which causes the business hardship," H.Rep. No. 93–807, 93rd Cong., 2d Sess. 82 (1974), *reprinted in* 1974 U.S. Code Cong. and Ad.News 4670, 4747, *and in* 2 Legislative History 3121, 3202, and in cases "where the application of this requirement would involve substantial business hardship to the employer and would be adverse to the interests of plan participants in the aggregate." *Id.* at 25, *reprinted in* 1974 U.S.Code Cong. and Ad. News at 4692, *and in* 2 Legislative History at 3145. *See* Section 303(a), 29 U.S.C. § 1083(a); H.Rep.No. 93–1280, 93rd Cong. 2d Sess. 282–84 (1974), *reprinted in* 1974 U.S.Code Cong. and Ad.News 5038, 5063–65, *and in* 3 Legislative History 4277, 4549–51.

In deciding whether to grant such a waiver, the IRS must consider whether:

(1) the employer is operating at an economic loss,

(2) there is substantial unemployment or underemployment in the trade or business and in the industry concerned,

(3) the sales and profits of the industry concerned are depressed or declining, and

(4) it is reasonable to expect that the plan will be continued only if the waiver is granted.

Section 303(b), 29 U.S.C. § 1083(b); *see* 26 U.S.C. § 412(d)(2). Any payments waived are to be made up over the next fifteen years. 29 U.S.C. § 1082(b)(2)(C).

The plaintiffs admit that the Section 303 waiver insulated Mesta from the penalty tax and from the loss of the qualified status of the plans. Plaintiffs argue, however, that the waiver did not excuse Mesta's obligations imposed by Section 302 to make the contributions to the pension plans. We find the conclusion unavoidable that Congress also intended Section 303 to excuse the employer from the obligation to make a current contribution in cases of financial hardship.

The legislative history gives no hint that Congress intended a Section 303 waiver to have the limited effect suggested by plaintiff. On the contrary, it clearly indicates that once such a waiver is obtained, the employers' obligation to pay is deferred. As one of the House Reports states, "Within limits, employers who are financially unable to meet the funding requirements should be allowed to postpone paying contributions to their plans." H.Rep. No. 93–779, 93rd Cong., 2d Sess. 73 (1974), *reprinted in* 2 Legislative History at 2662. *See* Sen.Rep. No. 93–383, 93rd Cong., 1st Sess. 25 (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 4890, 4910, *and in* 1 Legislative History at 1093; *Id.* at 57, 61–63, *reprinted in* 1974 U.S.Code Cong. & Ad.News at 4942, 4946–47, *and in* 1 Legislative History at 1125, 1129–31; H.Rep. No. 93–779, 93rd Cong. 2d Sess., 5, 25 (1974), *reprinted in* 2 Legislative History at 2594, 2614.

Moreover, the rationale for the Section 303 waiver cannot be limited as plaintiffs suggest. Congress adopted the waiver provision out of concern that, without such a mechanism, employers would terminate their employee benefit plans rather than risk exposure to ERISA liability.

An employer is under no obligation to initiate or continue his ERISA plan. Thus, in instances of financial hardship, if the employer was obligated to continue funding the plan at a level higher than

he could afford, he might instead choose to terminate the plan. Congress did not believe that in such a situation of financial hardship an employer should be forced to abandon his plan. This is the reason for the variance rule of Section 303.

Sen.Rep. No. 93–383, 93rd Cong., 1st Sess. 61–63 (1973), *reprinted in* Legislative History at 1129–31.

Congress, by permitting hardship variances, sought to discourage employers from terminating plans in times of financial difficulty. This rationale applies equally to Section 409 liability, 29 U.S.C. § 1109, as to the tax penalties. An individual trustee, who was also an officer or a director of an employer deciding whether to terminate a plan, and who is exposed to civil and criminal liability for the breach of fiduciary duties, would find little comfort in the Section 303 waiver if it had no effect on the employer's obligation to contribute or on his duty to seek contributions from the employer. Were we to accept plaintiffs' reasoning, we believe that such individuals would be likely to terminate plans despite the possibility of obtaining a Section 303 waiver. This was the very result Congress intended to discourage by providing the waiver option in Section 303.

 We therefore disagree with plaintiffs' suggestion. As the purpose of Section 303 is to discourage premature plan terminations, it temporarily waives the employer's obligation to contribute to a plan, and thus insulates the employer from the penalties of a lower funding level, including suits by trustees seeking to enforce Section 302. Accordingly, the trustees breached no fiduciary duty in failing to bring suit against Mesta to enforce the minimum funding obligations that had been waived.

Moreover, we believe the existence of the Section 303 waiver has additional significance in this case. That waiver demonstrates that a neutral party, the Secretary,

decided that, given Mesta's financial position in 1981, requiring the Section 302 contribution would create a significant potential of harm to the interests of the plan participants and make it likely that the plan would be terminated. This fact is significant in the context of the later period during which Mesta's second Section 303 waiver request was pending because the stipulated facts relating to that period show no change of circumstance which would support a contrary conclusion.

 It normally will be reasonable for plan fiduciaries to refrain from action which might send the employer into bankruptcy or lead to the termination of the plan. On the facts stipulated here, we believe this explains and justifies the failure of the plan fiduciaries to institute collection litigation. In short, we agree with the district court that the fiduciaries' inaction during the period from the granting of the first waiver in December 1981 until the February 1983 bankruptcy filing was reasonable.[10]

 We do not, of course, suggest that pension trustees will always be justified in declining to bring suit against an employer who has applied for a Section 303 waiver of its minimum funding requirements. Indeed, whenever an employer seeks to avoid making its pension plan payments, whether pursuant to Section 303 or in any other manner, trustees have a duty to investigate the relevant facts, to explore alternative courses of action and, if in the best interests of the plan participants, to bring suit against the employer. *See Struble,* 732 F.2d at 335; *Donovan,* 680 F.2d at 271. These duties, and the overriding obligation to maintain a primary loyalty to the fund, are heightened, if anything, when the trustees also serve as officers of the employer company, as here.

Nonetheless, the parties in this action have stipulated that the employer was in dire financial straits, and there is no allegation that its application for a Section 303

---

10. The failure of the IRS to grant the second waiver request does not suggest a contrary conclusion. The IRS will typically deny a request for a waiver if the employer is in bankruptcy. This apparently is an indication that, in such circumstances, plan termination is more appropriate than waiver. Osgood, *The Law of Pensions and Profit-Sharing,* 99 (1984).

waiver was made in bad faith. Moreover, plaintiffs have produced no evidence that a collection action by trustees would have produced any beneficial results for the fund. As summary judgment was granted by the district court on a detailed set of stipulated facts and after cross motions for summary judgment had been filed, it appears clear that plaintiffs have had full opportunity to develop the record. In light of these considerations, we hold that the trustees did not breach their fiduciary duties in failing to institute collection actions against Mesta. As noted above, this conclusion precludes the imposition of liability under ERISA on Mesta, as well as on the trustees. *See Struble*, 732 F.2d at 336–37.

## III

Therefore, the district court's grant of summary judgment in favor of defendants on the ERISA claim will be affirmed. As the plaintiffs' federal claims against Mesta and the trustees were properly disposed of, the district court's dismissal of plaintiffs' pendant state law claims will also be affirmed. *See Greenfield v. Heublein, Inc.*, 742 F.2d 751, 760 (3d Cir.1984).