857 F.2d 339
 57 USLW 2248, 10 Employee Benefits Ca 1136
 John MORSE and John McLain and All Others Similarly
Situated, Plaintiffs- Appellants,
v.
Thomas V. ADAMS, William B. Cudlip, Gene E. Gann, William H.
Holman, Russell G. Howell, Robert C. McLaughlin, Charles R.
Montgomery, William P. Panny, Daniel J. Terra, Russell S.
Holiday, W. John Roberts, William V. Murphy, Bernard M.
Neckrich, Edward P. Quick, Walter B. Robinson, Ronald S.
Pepp, Richard A. Filipp, Ernest G. Brocher, Donald L.
Lochhead, and Robert P. Perkins, jointly and severally,
Defendants-Appellees.
 No. 87-1956.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 2, 1988.
Decided Sept. 20, 1988.
 
 Marc A. Goldman, Patrick Burkett, Sommers, Schwartz, Silver, and Schwartz, P.C., Patrick Burkett, Lawrence F. Schiller (argued), Southfield, Mich., for plaintiffs-appellants.
 Thomas G. McNeill, Detroit, Mich., Arthur S. Meyers, Jr., Robert P. Young (argued), Mark K. Riashi, for defendants-appellees.
 Before KEITH, KENNEDY and NELSON, Circuit Judges.
 KENNEDY, Circuit Judge.
 
 
 1
 John Morse and John McLain, on behalf of themselves and a class consisting of all salaried non-union employees of McLouth Steel Corporation on November 15, 1982, and former salaried non-union employees who retired before that date, appeal from the District Court's grant of partial summary judgment to defendants-appellees, who were directors or officers of McLouth in 1981-1982. The District Court dismissed plaintiffs-appellants' claims of breach of fiduciary duty under ERISA, the Employee Retirement Income Security Act, 29 U.S.C. Sec. 1001 et seq., dismissed their common law negligence claim, and granted defendants' motion to strike plaintiffs' jury demand and prayer for individual damage awards. The dismissal of the negligence claims is not at issue on appeal.
 
 
 2
 The crux of plaintiffs' claims is that defendants breached their duty as fiduciaries of McLouth's pension and welfare plans by not opposing acts taken by McLouth when the company encountered financial trouble and filed for reorganization under Chapter 11 of the Bankruptcy Act. The bankruptcy court permitted McLouth to reduce and then terminate the welfare plans and to terminate the pension plan. Some, but not all, of the defendants allegedly held positions within McLouth that involved administration of the various benefits, and perhaps of pensions, on behalf of the corporation. However, none of the defendants were trustees of the pension plan; the welfare plans had no trustees. Under these circumstances, the fiduciary duty owed to a particular plan by any of the defendants, if any, is not clear. Their responsibilities were solely the result of their positions as employees of McLouth, not as either trustees or employees of the plans. Any fiduciary duty owed by these defendants was therefore less exacting than that owed by a trustee.
 
 
 3
 One of the difficulties of this case, therefore, is that plaintiffs have asserted a breach of a fiduciary duty which is as yet undefined. Throughout the proceedings in this lawsuit, it has not been clear what plaintiffs claim defendants did that breached any duty they owed either to the plans or to plaintiffs. Nor is it clear what plaintiffs contend defendants should have done.
 
 
 4
 This case also presents a complex question of first impression concerning whether plaintiffs may maintain this suit for individual damages. See Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 139 n. 5, 105 S.Ct. 3085, 3088 n. 5, 87 L.Ed.2d 96 (1985). We need not decide that question however, nor do we reach the issue of whether plaintiffs would be entitled to a jury trial of these claims, because we are convinced that under the circumstances presented in this case, there is no possibility that defendants breached any fiduciary duty. We therefore affirm the judgment of the District Court.
 
 
 5
 The pension plan and the welfare plans present different considerations, and, like the District Court, we shall discuss them separately.
 
 
 6
 As an initial matter, the defendants argue, and the District Court held as an alternative basis for its decision, that the plaintiffs have no standing to sue because they were not "participants" in the plans. The civil enforcement provision of ERISA, section 502, provides that:
 
 
 7
 A civil action may be brought--
 
 
 8
 (1) by a participant or beneficiary--
 
 
 9
 * * *
 
 
 10
 (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
 
 
 11
 (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 11.09 of this title;
 
 
 12
 (3) by a participant, beneficiary, or fiduciary
 
 
 13
 (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;
 
 
 14
 29 U.S.C. Sec. 1132(a).
 
 
 15
 Section 1002(7) includes in the definition of participant "any ... former employee ... who is or may become eligible to receive a benefit of any type from an employee benefit plan," 29 U.S.C. Sec. 1002(7).
 
 
 16
 The District Court believed that former employees were participants only when they have a reasonable expectation of returning to covered employment, or when they have a colorable claim to vested benefits. Since McLouth has sold all its assets to another company, none of the plaintiffs will return to employment there. And, unlike the situation in a pension plan, the welfare plans were not subject to the vesting requirements of ERISA. While recognizing that "claims under a walfare plan may vest if it is provided for in the terms of the plan or if the parties' course of conduct demonstrates an intention that the plan vest at a certain time," Joint Appendix at 130, the District Court held that there was no indication that vesting in this case was possible except under the terms of ERISA.
 
 
 17
 We believe that plaintiffs sufficiently alleged that they were entitled to receive the welfare benefits as part of their individual contracts of employment with McLouth. Plaintiffs alleged in their amended complaint that "[i]n connection with its employment practices, McLouth entered into employment agreements with its non-union salaried employees," Joint Appendix at 27, p 32. The agreements were said to have been described in "booklets, brochures, circulars and handbooks," id. at p 33, and were claimed to have been in return for the employee's agreement to provide services for McLouth. The amended complaint then describes terms of these asserted employment agreements relating to various benefits, including severance, vacation, holidays, disability, and supplements to unemployment benefits, id. at paragraphs 35-46.
 
 
 18
 Defendants argue that this issue is not properly before this Court, although, as we have seen, the allegations appear in the complaint. The basis of defendants' contention is that the issue was waived when not included in the pretrial conference statement which the District Court ordered plaintiffs to file, See Fed.R.Civ.P. 16. Defendants cite no cases for this proposition. Moreover, in their response to defendants' motion for summary judgment, plaintiffs reiterated the contractual basis of their claim:
 
 
 19
 The Plaintiffs commenced and continued their employment with McLouth Steel Corporation based upon both the salary received for the job performed as well as the Employee Welfare Benefit programs identified above and the Pension Plan McLouth has described these plans to the Plaintiff [sic] in written and oral communications and they became part of the employment contract between Plaintiffs and McLouth.
 
 
 20
 Joint Appendix at 87. We believe the contractual basis of plaintiffs' theory was squarely presented to the District Court for its resolution.[1]
 
 
 21
 It follows that if these plaintiffs had a contractual right to receive these benefits, they were thereby "participants" under ERISA, as provided in the statutory definition, 29 U.S.C. Sec. 1002(7). Some of the class would clearly have been former employees who were eligible, or who may become eligible, to receive a benefit from a benefit plan. If a contractual right to benefits existed, then these plaintiffs were participants. These allegations are sufficient to confer standing on these plaintiffs.
 
 
 22
 The District Court made no finding as to whether individual contracts of employment existed that included an entitlement to the benefits. Since we hold that even if such contracts existed defendants did not breach their fiduciary duty, we shall assume for the purposes of this discussion that the allegations of contractual obligation in the complaint are correct.[2]
 
 
 23
 We therefore turn to the merits of the welfare plan claim. In substance plaintiffs are claiming that defendants, or some of them, owed an obligation to them as beneficiaries of the plans to attempt to persuade McLouth to continue to fund the plans and to present their contractual claims to the bankruptcy court when McLouth entered bankruptcy proceedings.[3]
 
 
 24
 Whatever the duties a trustee might have had either in participating in the corporate decision to file for reorganization or attempting to persuade the bankruptcy court not to approve reduction or elimination of benefits, we are convinced that these defendants did not breach their fiduciary duty. We do not believe a corporate officer who is not a trustee of a plan has a fiduciary duty to base corporate decisions on the interests of plan beneficiaries. See Hickman v. Tosco Corp., 840 F.2d 564, 566 (8th Cir.1988) (" 'ERISA ... envisions that employers will act in a dual capacity as both fiduciary to the plan and as employer. ERISA does not prohibit an employer from acting in accordance with its interests as employer when not administering the plan or investing its assets.' ") (quoting Phillips v. Amoco Oil Co., 799 F.2d 1464, 1471 (11th Cir.1986)).
 
 
 25
 Nor was it the duty of these defendants to present the claims of the beneficiaries to the bankruptcy court, when the plaintiffs had notice of the bankruptcy proceedings and an opportunity to file any individual claim. In fact, over a hundred of the plaintiff class did participate as claimants in the McLouth bankruptcy reorganization. Plaintiffs correctly point out that the fact that particular plaintiffs participated in the bankruptcy proceedings does not in itself foreclose their suing for a breach of fiduciary duty. But the ability of plaintiffs to so participate, and to safeguard their interests thereby, is a further indication that defendants had no duty to them in this regard.
 
 
 26
 The pension plan presents an additional consideration. Minimum funding requirements are imposed by ERISA, although an employer in financial difficulties may obtain a waiver from the Internal Revenue Service, 29 U.S.C. Sec. 1083. McLouth received such a waiver, and the District Court held that this waiver insulated the defendants from any claim that they breached their fiduciary duty by not instituting an action or otherwise attempting to get McLouth to continue to fully fund the plan. The District Court relied on McMahon v. McDowell, 794 F.2d 100 (3d Cir.), cert. denied, 479 U.S. 971, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986), for the proposition that fiduciaries have no duty to compel employers to make contributions to a pension fund when the employer has applied for a waiver under section 1083. Plaintiffs argue that McMahon is far more limited in its holding, and is distinguishable because based on stipulated facts. They claim that the Seventh Circuit's decision in International Union v. Keystone Consolidated Industries, 793 F.2d 810 (7th Cir.), cert. denied, 479 U.S. 932, 107 S.Ct. 403, 93 L.Ed.2d 356 (1986), supports their argument.
 
 
 27
 But Keystone involved a collective bargaining argeement, rather than the asserted individual contracts of employment as here. The preemption provision of ERISA, 29 U.S.C. Sec. 1144, preempts state law but does not supersede the federal common law of labor-management relations, Murphy v. Heppenstall Co., 635 F.2d 233 (3d Cir.1980), cert. denied, 454 U.S. 1142, 102 S.Ct. 999, 71 L.Ed.2d 293 (1982); see Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). As the Seventh Circuit noted: "ERISA expressly provides that an employer's failure to make a pension plan contribution agreed upon in a collective bargaining agreement violates ERISA," Keystone, 793 F.2d at 814, citing 29 U.S.C. Sec. 1145. ERISA makes no similar exemption for pension plan contributions required by individual contracts of employment.
 
 
 28
 Plaintiffs claim that defendants should have prevented McLouth from reducing its funding of the pension plan. However, McLouth's action in applying for a waiver of funding was part of the comprehensive regulatory scheme Congress intended when it passed ERISA. Even if the employer's acting in full conformity to the provisions of ERISA does not automatically insulate trustees from a suit for breach of their fiduciary duty, it is strong evidence that the trustees' action was reasonable. In the case of defendants who are not trustees, it is apparent that their fiduciary duty to the pension plan, if any, cannot extend so far as to make them liable for acts permitted by ERISA and committed in their capacity as corporate directors or officers.
 
 
 29
 Our holding on this issue is therefore a narrow one. We agree with the Third Circuit that
 
 
 30
 whenever an employer seeks to avoid making its pension plan payments, whether pursuant to Section 303 or in any other manner, trustees have a duty to investigate the relevant facts, to explore alternative courses of action and, if in the best interests of the plan participants, to bring suit against the employer. These duties, and the overriding obligation to maintain a primary loyalty to the fund, are heightened, if anything, when the trustees also serve as officers of the employer company, as here.
 
 
 31
 McMahon, 794 F.2d at 112 (citations omitted). But we believe that even had these defendants been trustees, it is sufficiently clear to justify the granting of summary judgment that McLouth, like the employer in McMahon, was genuinely in dire financial straits, and that there is no allegation that the application for a waiver was made in bad faith. Nor, again as in McMahon, have plaintiffs come forward with any evidence that a collection action by the defendants would have produced any results. Nor have they suggested why when there were trustees of the pension plan, defendants would have such a duty. In these limited circumstances, and in the absence of a collective bargaining agreement requiring pension contributions, the actions of these non-trustee defendants in regard to the pension plan were reasonable.
 
 
 32
 The judgment of the District Court dismissing plaintiffs' action is affirmed.
 
 
 
 [1]
 Defendants also argue in passing that common law principle of waiver and estoppel apply. It is clear they do not. See Apponi v. Sunshine Biscuits, Inc., 809 F.2d 1210, 1217 (6th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 77, 98 L.Ed.2d 40 (1987)
 
 
 [2]
 As we have stated, we do not reach the issue of whether a plaintiff with standing may sue a fiduciary in his or her own behalf or only on behalf of the plan. The District Court did not base its standing decision on the distinction between a class action on behalf of all plan participants and a "derivative" action on behalf of the plan itself
 
 
 [3]
 At oral argument, plaintiffs apparently abandoned their previous contentions that some of the acts that they claim constitute a breach of fiduciary duty in regard to the welfare plans occurred before McLouth filed for bankruptcy. Even if they had not, their only additional claim would be that the defendants breached their fiduciary duty by not attempting to persuade McLouth not to file for reorganization under Chapter 11. Our discussion would apply equally to such a claim