Robert A. NOLEN, Jr., Plaintiff,

v.

The PAUL REVERE LIFE INSURANCE
COMPANY, Defendant.

Civil Action No. 97–7989.

United States District Court,
E.D. Pennsylvania.

Dec. 28, 1998.

**212**

Jonathan Wheeler, Jonathan Wheeler, P.C., Philadelphia, PA, for Plaintiff.

Platte B. Moring, III, White and Williams, Philadelphia, PA, Andrew F. Susko, White and Williams, Philadelphia, PA, Elizabeth A. (Croke) Venditta, White and Williams, Philadelphia, PA, Platte B. Moring, III, White and Williams, Allentown, PA, for Defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

## I. INTRODUCTION

Before the Court is defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment. Plaintiff was a participant under a group disability insurance policy issued by defendant to Phoenix Mortgage Company, where plaintiff was an employee. Plaintiff brought this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, seeking to overturn a decision by the claims administrator under the policy denying him long term disability benefits.[1] Defendant moves for summary judgment on the basis that: (1) the claims administrator's decision is subject to the deferential arbitrary and capricious standard; and (2) applying this standard of review, the claims administrator's decision to deny plaintiff's request for benefits was not arbitrary and capricious because plaintiff failed to meet the definition of totally disabled under the policy. Plaintiff asserts that summary judgment in defendant's favor is inappropriate because: (1) the

claims administrator's decision is subject to the heightened de novo standard of review, as the policy does not vest discretion in the claims administrator to make factual determinations regarding individual claims; (2) alternatively, even if the arbitrary and capricious is applicable, the Court should utilize heightened scrutiny because defendant is laboring under a conflict of interest; and (3) applying either the de novo or the arbitrary and capricious standard of review, the claims administrator's decision to deny plaintiff's request for benefits cannot reasonably be supported by the evidence. Plaintiff has also filed a cross-motion for summary judgment asserting that he clearly suffers from a long term disability and that there is no genuine issue of material fact as to whether plaintiff is totally disabled under the policy.

The Court finds that review is appropriate under the heightened arbitrary and capricious standard and that there are genuine issues of material fact in dispute as to whether plaintiff is totally disabled under the policy. Therefore, defendant's motion and plaintiff's cross-motion for summary judgment shall be denied.

## II. BACKGROUND

On April 10, 1995, plaintiff began his employment with Phoenix Mortgage Company as a reverse mortgage coordinator. Plaintiff describes his job duties as "marketing and sales of reverse mortgages to senior citizens; calling on senior citizen groups for conducting seminars; educating seniors to product and benefits; identifying prospects," taking applications in prospects' homes...." Other physical requirements of the job include "entering and exiting car 10 to 20 times a day; lifting over five pounds; changing position."

Plaintiff was a participant under a group disability insurance policy issued by defendant to plaintiff's employer, Phoenix Mortgage Company. On November 1, 1995, plaintiff was diagnosed with prostate cancer by urologist Dr. Richard Greenberg. From January 4, 1996 to January 11, 1996, plaintiff was hospitalized for prostate surgery. Since

---

1. Under the policy, defendant was named as the claims administrator. Def.Mot. for Summ.J., Ex. C (citing Policy at 32). Therefore, the decision of the claims administrator is binding upon defendant Paul Revere Life Insurance Company.

that time, plaintiff continues to suffer from stress incontinence and has not returned to work.[2]

On May 20, 1996, plaintiff submitted an application for both short term and long term disability benefits. In his application for benefits, plaintiff wrote that his disability affected his job performance because "long auto drives all affect an adverse reaction by the bladder (uncontrollable)." On June 6, 1996, the claims administrator received plaintiff's application for benefits. On that same day, the claims administrator granted plaintiff's request for short term benefits. However, on September 27, 1996, notwithstanding the earlier approval of the plaintiff's request for short term benefits, the claims administrator denied plaintiff's request for long term disability benefits. Plaintiff then appealed the claims administrator's decision.[3] On January 3, 1997, after review of medical evidence, the claims administrator again denied plaintiff's request for long term disability benefits.[4]

## III. LEGAL STANDARD

Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court must accept the non-movant's version of the facts as true, and resolve conflicts in the non-movant's favor. *Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1363 (3d Cir.

1992), *cert. denied,* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has done so, however, the non-moving party cannot rest on its pleadings. *See* Fed.R.Civ.P. 56(e). Rather, the non-movant must then "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp.,* 967 F.2d 846, 852 (3d Cir.1992); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When there are cross-motions, each motion must be considered separately, and each side must still establish a lack of genuine issues of material fact and that it is entitled to judgment as a matter of law. *Rains v. Cascade Indus., Inc.,* 402 F.2d 241, 245 (3d Cir.1968); *see also Sterling v. Southeastern Pennsylvania Transp. Auth.,* 926 F.Supp. 65, 68 (E.D.Pa.1996) (citing *United States v. Hall,* 730 F.Supp. 646, 648 (M.D.Pa. 1990)); 10A Charles A. Wright, Authur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 3d § 2720.

## IV. ANALYSIS

In assessing whether summary judgment is proper in this case, the Court must first determine the appropriate standard of review, and then whether genuine issues of material fact exist. The Court finds that (1) the appropriate standard is the heightened arbitrary and capricious standard; and (2) that there are genuinely disputed issues of material fact, which outcome would affect a trier of fact's decision, as to whether the

2. Plaintiff is currently incarcerated at the State Correctional Facility in Waynesburg, Pennsylvania in an unrelated matter and his incarceration may extend until September, 1999.

3. The policy provides for an appeal or claims review procedure, such that if a participant believes an error has been made concerning benefits, within ninety days after the initial decision, the participant can submit a written request that the claims administrator review its decision, along with supporting documentation. Within

sixty days after the receipt of the participant's appeal, the claims administrator will conduct a full and fair review of the participant's claim, and the claims administrator will then render a final decision. Def.Mot. for Summ.J., Ex. C (citing Policy at 33).

4. The record reflects that on at least one other occasion, February 20, 1997, the claims administrator reaffirmed its findings, denying plaintiff's request for long term benefits.

claims administrator's denial of plaintiff's request for long term disability benefits was arbitrary and capricious.

### A. *The Applicable Standard of Review.*

#### 1. *The applicable standard of review is arbitrary and capricious.*

■ This action is governed by ERISA, 29 U.S.C. § 1001 *et seq.* However, ERISA does not specify a standard of review applicable to actions brought by a plan participant alleging a denial of benefits.[5] *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Defendant asserts that the arbitrary and capricious deferential standard should apply because the policy vests discretion in the claims administrator to construe and interpret the terms of the policy when making claims determinations. In response, plaintiff contends that the de novo heightened scrutiny standard should apply for two reasons: (1) the policy does not give the claims administrator discretion to make factual determinations regarding benefits eligibility; and (2) even if the arbitrary and capricious standard applied, defendant, as both the claims administrator and insurer, has a conflict of interest since any payment of long term benefits to plaintiff approved by the claims administrator would come out of the insurer's own funds.

The Court finds that the policy grants discretion to the claims administrator to make decisions regarding benefits eligibility, and thus, the arbitrary and capricious standard applies. However, the Court also finds that a heightened arbitrary and capricious standard is warranted, given defendant's role as both the claims administrator and the insurer of the policy.

■ In determining the appropriate standard of review, the Supreme Court in *Firestone* rejected the universal application of the arbitrary and capricious standard when reviewing an ERISA administrator's decision regarding benefits eligibility. Rather, applying principles of trust law, the *Firestone* Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone,* 489 U.S. at 115, 109 S.Ct. 948. The *Firestone* holding was interpreted by the Third Circuit in *Luby v. Teamsters Health, Welfare & Pension Trust Funds,* 944 F.2d 1176 (3d Cir.1991). Under *Luby,* where a claims administrator is granted discretionary authority to grant or deny benefits, the claims administrator's factual determinations as well as interpretations of the policy are reviewed under the arbitrary and capricious standard. *Id.* at 1183–84.

■ This discretionary authority need not be expressly granted. Rather, it may be implied from the policy's terms as a whole. *Id.* at 1180. Under the deferential arbitrary and capricious standard, a district court may overturn a claims administrator's decision only if it is " 'without reason, unsupported by substantial evidence or erroneous as a matter of law' " and " 'the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits.' " *Abnathya v. Hoffmann–La Roche, Inc.,* 2 F.3d 40, 45 (3d Cir.1993) (citing *Adamo v. Anchor Hocking Corp.,* 720 F.Supp. 491, 500 (W.D.Pa.1989)); *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 983 (6th Cir.1991); *Lucash v. Strick Corp.,* 602 F.Supp. 430, 434 (E.D.Pa.1984), *aff'd,* 760 F.2d 259 (3d Cir.1985). Therefore, the determination of the appropriate standard of review depends upon whether the terms of the policy granted the claims administrator the discretion to act as a finder of fact in assessing whether plaintiff was totally disabled as of the date plaintiff applied for long term disability benefits. *See Mitchell v. Eastman Kodak Co.,* 113 F.3d 433, 438 (3d Cir.1997); *Luby,* 944 F.2d at 1180.

In this case, the language of the policy provides that:

> The Paul Revere Life Insurance Company, as the Claims Administrator, has the full, final, conclusive and binding power to construe and interpret the policy under the plan as may be necessary in order to make

---

**5.** *See* 29 U.S.C. § 1132(a)(1)(B).

claims determinations. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious or unless there is no rational basis for a decision.

Def.Mot. for Summ.J., Ex. C (quoting Policy at 31).

Courts have found the language in the above provision, as well as language similar to it, bestows discretionary authority upon a claims administrator and warrants application of the deferential arbitrary and capricious standard. *See, e.g., Jones v. Laborers Health & Welfare Trust Fund,* 906 F.2d 480, 481 (9th Cir.1990) (concluding that plan which gave Board of Trustees power "to construe the provisions of this Trust Agreement and the Plan, and any such construction adopted by the Board in good faith shall be binding" was a grant of discretionary authority); *Quinn v. Paul Revere Life Ins. Co.,* 953 F.Supp. 1125, 1129–30 (D.Or.1996) (finding that the exact clause as in the case before this Court granted discretionary authority to the claims administrator and applied the arbitrary and capricious standard of review). Therefore, in this case, the clear and unambiguous language of the policy provides authority to the claims administrator to construe and interpret the policy in making claims determinations, which necessarily involves assessing a participant's entitlement to benefits.

■ Additionally, the claims administrator's discretionary authority can be implied from other language contained in the policy. For example, the policy requires that in order for a participant to be considered totally disabled under the policy, the participant must be receiving doctor's care. However, the claims administrator will waive this requirement "if [the claims administrator] receive[s] written proof acceptable to [him] that further Doctor's Care would be of no benefit to [the participant]." Def.Mot. for Summ.J., Ex. C (quoting Policy at 9). "It is apparent that [plans requiring proof satisfactory to the insurance company and plans expressly declaring that the plan administrator will determine eligibility] both require the administrator to decide whether the person has become eligible as a result of presentation of satisfac-tory proof to that effect." *Snow v. Standard Insurance Co.,* 87 F.3d 327, 330 (9th Cir. 1996). Several Circuit courts have found, and this Court agrees, that this type of language, mandating that evidence or proof be satisfactory to the claims administrator, is sufficient to apply the arbitrary and capricious standard of review. *See Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380–81 (6th Cir.1996) (finding that the deferential standard applied where a policy required a showing of satisfactory proof of total disability because "a determination that evidence is satisfactory is a subjective judgment that requires a plan administrator to exercise his discretion"); *Snow v. Standard Insurance Co.,* 87 F.3d 327, 330 (9th Cir.1996) (applying the arbitrary and capricious standard where a policy stated that no benefits would be paid unless the insurance company was presented with written evidence it considered to be satisfactory proof of the claimed loss); *Donato v. Metropolitan Life Ins. Co.,* 19 F.3d 375, 379 (7th Cir.1994) (applying the deferential standard where a policy provided that "all proof must be satisfactory to us").

The Court concludes that the policy grants discretionary authority to the claims administrator to make factual determinations and to interpret the policy in determining a participant's entitlement to benefits.

*2. Defendant's inherent conflict of interest is sufficient to warrant a heightened arbitrary and capricious standard of review.*

Although the Court agrees with defendant that the arbitrary and capricious standard applies in this case, the Court's inquiry does not end there. Plaintiff argues that, even if the deferential standard of review applies, the Court should apply a heightened arbitrary and capricious standard because defendant is laboring under a conflict of interest by acting as both the claims administrator and the insurance company who ultimately pays benefits to eligible participants.

The Supreme Court in *Firestone* noted that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining

whether there is an abuse of discretion.'" *Firestone*, 489 U.S. at 115, 109 S.Ct. 948 (citing Restatement (Second) of Trusts § 187, Comment d (1959)).

The Third Circuit has not expressly decided whether an insurance company that acts as both an insurer and claims administrator is necessarily acting under a conflict of interest. However, at least one Circuit has so held.[6] *See Brown v. Blue Cross and Blue Shield of Alabama, Inc.*, 898 F.2d 1556 (11th Cir.1990), *cert. denied*, 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991). In *Brown*, the Eleventh Circuit determined that an insurance company's role as a fiduciary was in perpetual conflict with its profit-making role as a business when such company pays benefits claims out of its own assets, rather than a trust fund; therefore, in such a case, a heightened level of the arbitrary and capricious standard was warranted. *Id.* at 1561; *see also Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 437 n. 4 (3d Cir.1997) (implying that a conflict of interest would exist where an insurance company incurs direct expense as a result of the allowance of benefits, or directly benefits from the denial or discontinuance of benefits). A number of courts within the Third Circuit have reached the same conclusion as the Brown court. *See, e.g., Sciarra v. Reliance Standard Life Ins. Co.*, No. 97–1363, 1998 WL 564481, at *8–9 (E.D.Pa. Aug.26, 1998) (holding that "[defendant's] dual role as administrator and insurer of its own plan creates a conflict between its providing benefits to claimants and its own financial status"); *Perri v. Reliance Standard Life Ins. Co.*, No. 97–1369, 1997 WL 476386, at *6 (E.D.Pa. Aug.19, 1997) (same); *Morris v. Paul Revere Ins. Group*, 986 F.Supp. 872, 881–882 (D.N.J.

1997) (adopting the Eleventh Circuit's approach in *Brown* ); *Rizzo v. Paul Revere Ins. Group*, 925 F.Supp. 302, 309 (D.N.J.1996) (deciding that defendant's role as claims administrator and the issuing insurance company " 'inherently implicate[s] the hobgoblin of self-interest' ") (citing *Brown*, 898 F.2d at 1568), *aff'd*, 111 F.3d 127 (3d Cir.1997). *But see Stout v. Bethlehem Steel Corp.*, 957 F.Supp. 673, 691 (E.D.Pa.1997) (concluding that the heightened arbitrary and capricious standard was not warranted where the only evidence of a conflict of interest was the fact that an employer acted as the administrator of its own ERISA plan).

The Court agrees that there is an inherent conflict of interest when the same insurance company acts as both the insurer and the claims administrator because, when the claims administrator agrees to pay a participant's claim, a *fortiori*, the insurer incurs a direct expense. Therefore, the Court finds that a heightened arbitrary and capricious standard applies in this case.

B. *The Parties Dispute Whether Certain Medical Evidence was Submitted to and Used by the Claims Administrator in its Analysis of Plaintiff's Claim.*

The parties disagree as to what documents were in fact submitted by the plaintiff to the claims administrator and the claims administrator's interpretation of the documents that were submitted.

It is undisputed that the claims administrator reviewed the following medical evidence when making its initial determination on September 27, 1996, that plaintiff was not totally disabled:[7]

---

**6.** Note that at least one other Circuit court has reached a conclusion to the contrary. In *Atwood v. Newmont Gold Co., Inc.*, 45 F.3d 1317 (9th Cir.1995), the court concluded that the deferential arbitrary and capricious standard ultimately applies, unless the "affected beneficiary has provided material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self interest caused a breach of the administrator's fiduciary obligations to the beneficiary." *Id.* at 1322; *see also Snow v. Standard Insurance Co.*, 87 F.3d 327, 331 (9th Cir.1996) (finding that a formal conflict exists when defendant acts as both the insurance

company and the plan administrator, but a heightened arbitrary and capricious standard of review only applies "[i]f that formal conflict [leads] to a true conflict; [then] scrutiny of [defendant's] decision would become more searching").

**7.** The policy defines "totally disabled" or "total disability" as follows:

Totally disabled or total disability, for the first twenty-four months following the commencement of a loss, means:

(1) Plaintiff's application for disability benefits, occupational description, employer's statement, and partially completed attending physician's statement of Dr. Richard Greenberg, which defendant received on June 6, 1996;

(2) Dr. Greenberg's progress report of April 23, 1996, which states, "Urologically he is otherwise quite stable. Voiding with an excellent stream. He has complete urinary control."; and

(3) Dr. Greenberg's progress report of July 23, 1996, which states, "Denies any significant difficulty. Voiding well with good urinary stream and excellent control. Still has some mild stress incontinence, however."

Plaintiff appealed the claims administrator's decision of September 27, 1996 denying plaintiff's request for long term disability benefits. In connection with the appeal, plaintiff submitted and the claims administrator considered the following additional documents:

(1) Dr. Greenberg's letter to plaintiff's employer, Phoenix Mortgage Company, of September 11, 1996, which states, "This letter serves to confirm the fact that Mr. Nolen still suffers from stress incontinence, a condition which he feels renders him unable to perform his work duties.";

(2) Dr. Greenberg's outpatient progress report of November 26, 1996, which reads, "[P]roblems with urinary control persists. When he was last seen approximately six months he was noting some significant improvement with increased activity continues to have significant stress incontinence.... He probably would do better with an office type desk job rather than traveling type facility.... He is otherwise urologically stable. His bladder is not palpable. There is

no evidence of locally recurrent prostate cancer."; and

(3) Attending physician's statement of Dr. Greenberg of August 8, 1996, wherein Dr. Greenberg diagnosed plaintiff with prostate cancer and postoperative urinary stress incontinence, and checked a box indicating that plaintiff is totally disabled.

On January 3, 1997 and February 20, 1997, the claims administrator issued a denial of plaintiff's request for long term benefits, finding that plaintiff was not totally disabled as of April 23, 1996, and that it was unclear as to how any stress incontinence reflected in Dr. Greenberg's reports, which appear to be contradictory, impaired plaintiff from performing the substantial and material duties of his job.

In response and in support of his cross-motion for summary judgment, plaintiff points to at least two other documents that allegedly were submitted to the claims administrator and that he contends were not considered by the claims administrator in denying plaintiff's request for long term benefits:

(1) Dr. Greenberg's letter of April 28, 1996 addressed "To Whom It May Concern," which states, "I feel he is not ready to return to full-time work duty at this time and would expect a full recovery in approximately one months time."; and

(2) Dr. Greenberg's letter of June 21, 1996 to plaintiff's employer, Phoenix Mortgage Company, which states, "Mr. Nolen continues ... to experience difficulty with urinary stress incontinence. It was estimated he might be able to return to work by June 1, 1996. However, his recovery is not yet sufficient to return to work and will require additional time."

1. because of injury or sickness, you cannot perform the important duties of your own occupation;
2. you are receiving Doctor's Care. We will waive this requirement if we receive written proof acceptable to us that further Doctor's Care would be of no benefit to you; and
3. you do not work at all.
*After twenty-four continuous months total disability from your own occupation, total disability means:*

1. because of injury or sickness, you are prevented from engaging in any occupation for which you are suited by education, training or experience; and
2. you are receiving Doctor's Care. We will waive this requirement if we receive written proof acceptable to us that further Doctor's Care would be of no benefit to you.
Def.Mot. for Summ.J., Ex. C (quoting Policy at 9) (emphasis in original).

In response, defendant denies that Dr. Greenberg's letters of April 28, 1996 and June 21, 1996, upon which plaintiff relies, were ever submitted to the claims administrator as medical evidence. However, the claims administrator acknowledged Dr. Greenberg's attending physician's statement of August 8, 1996, and stated in a January 24, 1997 correspondence letter to plaintiff's counsel that the August 8, 1996 attending physician's statement was "completed well beyond the April 23, 1996 date for which we found Mr. Nolen to be no longer totally disable...." Defendant also challenges the veracity of the August 8, 1996 attending physician's statement. Defendant claims that Dr. Greenberg apparently checked conflicting boxes on the form indicating that plaintiff was both totally disabled and partially disabled as well. Additionally, defendant has identified two experts, Dr. Theerman and Dr. Goldstein, who have rendered opinions presumably based on objective clinical data, such as physician's office notes and test results, with respect to plaintiff's disability status. These reports support the claims administrator's finding that plaintiff ceased being totally disabled as of April 23, 1996.[8] However, defendant does not indicate whether the expert reports of Dr. Theerman and Dr. Goldstein were available to and relied upon by the claims administrator in finding that plaintiff was not totally disabled.

C. *Summary Judgment is Inappropriate Because There Remains a Genuine Issue of Material Fact as to Whether Plaintiff is Totally Disabled Under the Policy.*

■ The Court finds that there are genuine issues of material fact that preclude summary judgment in this case.

First, in his application for benefits, plaintiff identifies his job as a reverse mortgage coordinator, which include job duties of "marketing and sales of reverse mortgages

to senior citizens; calling on senior citizen groups for conducting seminars; educating seniors to product and benefits; identifying prospects, taking applications in prospects' homes...." Other physical requirements of the job include "entering and exiting car 10 to 20 times a day; lifting over five pounds; changing position." Plaintiff's application states that his disability affects his job performance because "long auto drives all affect an adverse reaction by the bladder (uncontrollable.)." However, despite these statements, the claims administrator, in its correspondence of January 3, 1997 and January 24, 1997, states that it is "unclear as to what the actual restriction or limitation is that impairs Mr. Nolen from doing the important duties of his occupation," and questions "how does [stress incontinence] render him [Mr. Nolen] totally disabled from performing his important job duties as of April 23, 1996?" In its correspondence letter of January 24, 1997, the claims administrator instructed plaintiff to submit medical documentation as to exactly what precluded plaintiff from resuming his work on April 23, 1996. In turn, it is unknown whether plaintiff submitted any such documentation in response. Plaintiff's factual description of his job duties as stated in his application for benefits is apparently undisputed. Yet, the extent and severity of plaintiff's disability remains disputed and is unclear from the progress reports, correspondence letters, attending physician's statements, and experts' reports. The degree to which plaintiff's stress incontinence affected his job duties, if at all, is a genuine issue of material fact in determining whether plaintiff was totally disabled under the terms of the policy and whether under the heightened arbitrary and capricious standard the claims administrator's denial of plaintiff's request for long term disability benefits was arbitrary and capricious.

Second, the parties have adverse factual positions regarding the particular documents

---

8. Dr. Theerman's report of August 11, 1996 states, "[Nolen] had returned to completely normal when next seen on 4/23/96. It is my impression that he [Nolen] was no longer precluded [from returning to work] as of the end of the [ ] on 4/2/96—3 months post-op." Dr. Goldstein's report of September 26, 1996 states, "I believe

he could have [returned to work] as of the 4/23/96 office note." Finally, Dr. Goldstein's report of December 13, 1996 reads, "I still consider the [ ] status on 4/23/96 ... as adequate for his [return to work] as of that date. The subsequent note of 7/23/96 ... would not change the [return to work] date, nor does the 11/26/96 note...."

upon which the claims administrator relied in denying plaintiff's claim. Plaintiff contends that he submitted the letters of April 28, 1996 ("I feel he [Mr. Nolen] is not ready to return to full-time work duty at this time....") and June 21, 1996 ("[H]e continues to experience difficulty with urinary stress incontinence [and] his recovery is not yet sufficient to return to work....") to the claims administrator in support of his claim of total disability. Defendant unequivocally denies that the claims administrator ever received these two letters. Whether the claims administrator received and had an opportunity to rely upon these letters is a genuine material fact in dispute because the letters, which were allegedly submitted prior to the claims administrator reaching a decision, are completely contradictory to the April 23, 1996 progress report of Dr. Greenberg ("Voiding with an excellent stream. He has complete urinary control.") upon which the claims administrator heavily relied in denying plaintiff's request for long term benefits. The presence or absence of the April 28, 1996 and June 21, 1996 letters would play a role in a factfinder's determination of arbitrary and capricious decisionmaking by the claims administrator. Furthermore, defendant refers to three expert reports by two different doctors which reveal that plaintiff could have returned to work as of April 23, 1996. However, defendant does not specify the exact basis for the expert reports and whether those reports were made available to the claims administrator during the assessment of plaintiff's initial claim and appeal. These facts are material because they would influence a trier of fact's conclusion that the claims administrator did or did not act in an arbitrary and capricious manner in denying plaintiff's request for long term disability benefits.

## V. CONCLUSION

The Court concludes that a heightened arbitrary and capricious standard is applicable in this case because of defendant's inherent conflict of interest. However, viewing each of the respective summary judgment motions in the light most favorable to the non-moving party, the Court finds that there exists a genuine issue of material fact as to whether plaintiff is totally disabled under the policy. Therefore, the Court finds that summary judgment is not proper in this case, and defendant's motion and plaintiff's cross-motion for summary judgment are denied.