Jenny GRABSKI, et al., Plaintiffs,

v.

AETNA, INC., Defendant.

No. Civ.A. 98–677.

United States District Court,
E.D. Pennsylvania.

March 30, 1999.

Elizabeth Kase Morelli, Paul R. Ober & Associates, Reading, PA, Bryon M. Yatron, Paul R. Ober & Assoc., Reading, PA, for plaintiffs.

Thomas J. Cole, Pepper Hamilton, LLP, Philadelphia, PA, for defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

### I. INTRODUCTION

Plaintiffs, Jenny Grabski, Michael Grinnage, Richard Grinnage, Oscar Hernandez, Marco Salinas, Jeffrey Sample, Lillian Suarez and Carmen Velazquez ("Plaintiffs" or "marketing representatives") brought this action against their former employer, defendant Aetna Inc. ("Aetna") seeking severance and salary continuation benefits. Specifically, plaintiffs advance the following three causes of action against Aetna: 1) violation of Pennsylvania's Wage Payment and Collection Law, 43 Pa.Cons.Stat. Ann. § 260.1 *et seq.*, ("WPCL"); 2) nonpayment of benefits under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*, ("ERISA"); and 3) breach of contract.

Plaintiffs had been employed by Aetna Health Plan of Central and Eastern Pennsylvania, Inc., a subsidiary of Aetna Life and Casualty Company (collectively "Aetna"), as marketing representatives selling products pursuant to a contract Aetna had with Mercy Health Plan ("Mercy").

After some time, Aetna decided to end its contractual relationship with Mercy, and as a result, Aetna was prepared to terminate plaintiffs' employment on the date Aetna's relationship with Mercy ended. Prior to this date, however, Aetna offered each plaintiff the opportunity to continue his or her employment with a successor entity, AmeriHealth HMO, Inc. ("AmeriHealth"). AmeriHealth agreed to offer plaintiffs positions and salaries with incentive compensation opportunities which were comparable to their current positions with Aetna. If plaintiffs accepted the position with AmeriHealth, they simply would have continued selling the same products, under the same terms and conditions, on AmeriHealth's payroll. In light of this, the Administrator of Aetna's Severance and Salary Continuation Benefits Plan ("Plan Administrator") determined that since plaintiffs were given the opportunity to accept positions with AmeriHealth, plaintiffs were not entitled to severance benefits because a "Termination of Employment", as defined in Aetna's Severance and Salary Continuation Benefits Plan ("Plan"), had not occurred.

Defendant moves for summary judgment on the basis that: 1) plaintiffs' WPCL claim and breach of contract claim are preempted by ERISA pursuant to binding Third Circuit precedent and 2) plaintiffs' claims for severance benefits under ERISA fail because the Plan Administrator, who is given the sole power to decide all questions of eligibility and the sole power to interpret the provisions of the Plan, determined that plaintiffs did not suffer a "Termination of Employment" within the meaning of the Plan and that determination must be upheld because it was not arbitrary or capricious.

Plaintiffs contend that summary judgment in defendant's favor is inappropriate because: 1) there is a genuine issue of material fact whether Aetna's Plan Administrator was operating under a conflict of interest and whether the conflict should be weighed as a factor in determining wheth-

er there was abuse of discretion; 2) oral representations made by Aetna representatives at a February 19, 1997 meeting, create a genuine issue of material fact whether Aetna orally modified the Plan; and 3) based on the alleged oral modifications, Aetna should be held liable for payments on an equitable estoppel theory.[1] Plaintiffs, however, have not addressed whether the WPCL or the breach of contract claims are preempted by ERISA.

The Court finds that, under Third Circuit law, plaintiffs' WPCL and breach of contract claims are clearly preempted by ERISA. In addition, the Court concludes that the arbitrary and capricious standard is the proper standard of review applicable to this case, since plaintiffs have offered no evidence to show that the Plan Administrator was operating under a conflict of interest. The Court further finds that the Plan Administrator's decision to deny benefits was neither arbitrary nor capricious. Furthermore, the Court concludes that, as a matter of law, plaintiffs cannot rely on an oral modification to change the terms of a plan under ERISA. Finally, the Court finds that plaintiffs have failed to point to any evidence on the record, which would allow them to recover based on an equitable estoppel theory. As a result, summary judgment in favor of Aetna will be granted.

## II. FACTS [2]

In 1988, Aetna, then Freedom Health Care, entered into a contract with Mercy. Pursuant to the terms of the contract with Mercy, Aetna entered into a separate contract with the Commonwealth of Pennsylvania to provide health plan services to Medicaid beneficiaries in Eastern Pennsylvania. Aetna then subcontracted this work for the Commonwealth out to Mercy. Mercy did not contract with the Commonwealth because it did not wish to offer family planning services and did not have the HMO license required by the state.

Under the terms of the agreement between Mercy and Aetna, Mercy administered and was responsible for enrolling eligible Medicaid beneficiaries into the health plan. However, due to insurance and licensing regulations, the marketing representatives had to be employed by Aetna. Mercy in turn reimbursed Aetna for all costs associated with employing those marketing representatives.

Plaintiffs were all employed by Aetna as marketing representative. During the course of plaintiffs' employment at Aetna, the company distributed to each plaintiff, an employee manual which explained the salary continuation and severance benefits policies. Plaintiffs, however, were supervised by and reported to Mercy personnel and Mercy supervisors made salary and bonus decisions regarding plaintiffs.

In 1996, Aetna merged with U.S. Healthcare. During that same year, Mercy entered into a joint venture agreement with Keystone and became affiliated with AmeriHealth and Independent Blue Cross. Also in 1996, Aetna decided to end its contractual relationship with Mercy, effective March 31, 1997. Between December

1. Although Plaintiffs' Amended Complaint contains no claim for recovery based on an equitable estoppel theory, the Court will address this argument in turn.

2. Plaintiffs have failed to file any affidavits, cite to any depositions or produce any evidence which identifies their factual position. In fact, plaintiffs' Response to Aetna's motion for summary judgment does not even contain a statement of facts. Plaintiffs note that they "intend to file before the date of the hearing on Motion for Summary Judgment Affidavits Contra Summary Judgment and/or Answers to Interrogatories which will further demonstrate the existence of disputed issues of fact." Pls.' Resp. to Aetna's Mot. for Summ.J. at 9. ("Pls.' Resp."). This practice, however, is in direct contrast to the mandates of Federal Rule of Civil Procedure 56(e), requiring the non-moving to file a response, "by affidavits or otherwise provided in this rule", setting forth specific facts. Fed.R.Civ.P. 56(e). Nevertheless, the Court will construe the facts of record pointed to by defendant, the moving party, in the light most favorable to plaintiffs, the non-moving party.

1996 and March 1997, Aetna worked with Mercy, Keystone, AmeriHealth and the Commonwealth to help AmeriHealth expand its HMO license to cover Eastern Pennsylvania and thus insure the transfer of Medicaid beneficiaries from Aetna's health plan to the AmeriHealth/Mercy health plan.

From the time Aetna decided to end its contractual relationship with Mercy in December of 1996, Aetna and Mercy cooperated so that plaintiffs, who were then employed by Aetna, could be transferred to employment with AmeriHealth/Mercy once AmeriHealth obtained the necessary license and before the contract with Mercy ended in March of 1997. As of February 1997, however, Aetna did not know whether AmeriHealth/Mercy would be able to obtain the necessary license by March 31, 1997. During this time period, Aetna acknowledged that if AmeriHealth did not obtain the license by March 31, 1997, plaintiffs could not be employed by AmeriHealth and would suffer a break in employment.

By February of 1997, plaintiffs were made aware by Aetna representatives that Aetna was ending its contractual relationship with Mercy and of the potential end of their respective employment. As a result, plaintiffs began calling Aetna representatives to determine their employment status. Thereafter, a February 19, 1997 meeting was scheduled to address plaintiffs' concerns.

At the February 19, 1997 meeting, an Aetna representative explained to plaintiffs the following: that Aetna was ending its contractual relationship with Mercy; Aetna did not know whether plaintiffs would receive a job with AmeriHealth/Mercy; that if each plaintiff did not receive a job with AmeriHealth/Mercy by the time the contractual relationship ended on March 31, 1997, they would be terminated by Aetna effective on that date; and Aetna did not know if Ameri-

Health/Mercy would obtain the necessary license by March 31, 1997. In addition, at this meeting, Aetna handed out to plaintiffs a document entitled "Summary of Aetna Separation Program," which outlined Aetna's salary continuation and severance policies.

In early March of 1997, AmeriHealth obtained the necessary license it needed to employ plaintiffs. While initially AmeriHealth stated that it would offer plaintiffs comparable positions, however, it would not commit in writing to such an offer. As a result, on March 11, 1997, a conference call involving Aetna, AmeriHealth, Mercy and Keystone management was conducted during which Aetna informed the others that if Aetna did not have written confirmation of the job offers to plaintiffs, they would be entitled to severance benefits under Aetna's plan. Aetna also explained to AmeriHealth, Mercy and Keystone management that, pursuant to the contract between Aetna and Mercy, the costs of those benefits would be charged back to Mercy.

On March 13, 1997, AmeriHealth confirmed in writing to Aetna that it would offer plaintiffs employment with AmeriHealth and that their positions and salaries with incentive opportunities would be comparable to their current position with Aetna. Plaintiffs' employment with AmeriHealth was to start effective Monday, March 17, 1997.

Also, on March 13, 1997, a meeting was held at a Mercy office, where plaintiffs and representatives from Aetna were present. During this meeting, Aetna informed plaintiffs of the following: the date of the termination of plaintiffs' employment with Aetna would be March 14, 1997; Aetna's contract with Mercy expired March 31, 1997; plaintiffs were being terminated due to a transfer of operations; and Aetna would not be paying severance packages and/or salary continuation benefits to plaintiffs.[3]

---

**3.** In addition, the next day, on March 14, 1997, Aetna wrote plaintiffs confirming that

Following Aetna's denial of severance and salary continuation benefits, plaintiffs, pursuant to the Plan, appealed the decision to the Appeals Sub–Committee by letters dated June 13, 1997. The Appeals Sub–Committee voted to deny plaintiffs' appeals because in their determination, plaintiffs had not suffered a Termination of Employment within the meaning of the Plan and therefore were not entitled to severance and salary continuation benefits. In a letter dated August 12, 1997, the Appeals Sub–Committee informed plaintiffs' attorney of the decision and the reasons for the denial.

### III. LEGAL STANDARD

Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court must accept the non-movant's version of the facts as true, and resolve conflicts in the non-movant's favor. *Big Apple BMW, Inc. v. BMW of N. Amer., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied*, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has done so, however, the non-moving party cannot rest on its pleadings. *See* Fed.R.Civ.P. 56(e). Rather, the non-movant must then "make a showing sufficient to establish the existence of every element essential to his case, based on the

they were offered positions with AmeriHealth.

4. In this case, because plaintiffs, or the non-moving party, have not complied with the mandates of Rule 56(e) and have not filed

affidavits or by depositions and admissions on file." *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir.1992); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).[4]

### IV. DISCUSSION

#### A. *ERISA Preemption of State Law.*

■ Section 514(a) of ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The United States Supreme Court has concluded that "[t]he pre-emption clause is conspicuous for its breadth ... [and] ... [i]ts deliberately expansive language was designed to establish pension plan regulation as exclusively a federal concern." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 138, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (citations omitted). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). The Third Circuit has concluded that a state law claim 'relates to' and was thus preempted by ERISA if "the existence of an ERISA plan was a crucial factor in establishing liability, and the trial court's inquiry would be directed to the plan...." *The 1975 Salaried Retirement Plan for Eligible Employees of Crucible, Inc. v. Nobers*, 968 F.2d 401, 406 (3d Cir.1992), *cert. denied*, 506 U.S. 1086, 113 S.Ct. 1066, 122 L.Ed.2d 370 (1993).

Section 502(a)(1)(B) of ERISA also provides that a participant or beneficiary of an ERISA plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the

affidavits or pointed to evidence in the record, the Court will construe the facts of record pointed to by defendant, in the light most favorable to plaintiffs.

terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Thus, the Supreme Court has found that a claim for a denial of benefits, asserted under common law principles, is preempted by ERISA. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 62–63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

■ In the present case, plaintiffs assert two state law claims in the Amended Complaint: a violation of the WPCL and a common law breach of contract claim. It is undisputed, however, that Aetna's Plan is an employee benefit plan within the meaning of ERISA, 29 U.S.C. § 1003 *et seq.,* and plaintiffs were participants and/or beneficiaries under such Plan. *See* 29 U.S.C. § 1002. Plaintiffs have not offered any arguments to the contrary and in fact have plead such facts in Count II of their Amended Complaint. *See* Pls.' Am.Compl. ¶ 33–34. Plaintiffs would be able to determine the amount of any recovery under the WPCL or a breach of contract claim, only by reference to the Plan at issue and the provisions of ERISA.

The Court finds that the existence of Aetna's Plan is a crucial factor to establishing liability as to both state law claims and this Court would need to review Aetna's Plan in order to determine whether defendant is liable under either state law claims. Thus, both state law claims clearly "relate to" ERISA and are preempted.

The Third Circuit decisions of *Nobers* and *McMahon v. McDowell,* 794 F.2d 100 (3d Cir.), *cert. denied,* 479 U.S. 971, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986) are dispositive. In *McMahon,* plaintiffs brought claims pursuant to the WPCL for, among other things, wages and severance benefits against their former employer. The Third Circuit upheld the district court's grant of summary judgment on the basis that the claim for severance benefits pursuant to the WPCL was preempted by ERISA. The court, relying on ERISA's explicit and broad preemption provision, found that the WPCL claim "related to" an employee benefit plan. *Id.* at 106. The court stated

that "[i]nsofar as the WPCL authorizes the liability of [the employer] for unpaid employee benefit plan obligations, it obviously relates, refers, and pertains to the underlying employee benefit plans. The WPCL itself explicitly includes ERISA plans within its scope. 43 Pa.Stat.Ann. § 260.2(a) (1985). Indeed, the very existence of liability for unpaid pension contributions is, in the first instance, a result of the federal scheme." *Id.* Plaintiffs in this case are also precluded from advancing a claim under the WPCL for the same reasons as the plaintiffs in *McMahon.*

The Third Circuit also has found a breach of contract claim, similar to plaintiffs, preempted by ERISA. In *Nobers,* a group of former employees sought to bring a state law breach of contract claim for benefits pursuant to the employer's benefits plan. *Nobers,* 968 F.2d at 404. The court concluded that the state law breach of contract action "related to" an ERISA plan and was therefore preempted by ERISA. *Id.* at 406. Relying on the Supreme Court decision of *Ingersoll–Rand,* the court stated that "[t]he plans are certainly correct that the claim in *Nobers II* [claim of state law breach of contract] depends on the existence of an ERISA plan." *Id.* The court further found that "the trial court's inquiry in *Nobers II* would be directed to ERISA plans in that the calculation of damages would involve construction of ERISA plans, even though [the employers], not the plans themselves, would not be liable for damages." *Id.* Here, similar to the employees in *Nobers,* plaintiffs' state law breach of contract claim against Aetna relates to an ERISA plan and this Court's inquiry in determining liability on the contract claim would be directed to that plan. Aetna's Plan is clearly at the heart of each of plaintiffs' state law claims. Thus, Count I and III are preempted.

**B.** *The Applicable Standard of Review of the Administrator's Interpretation of the ERISA Plan.*

This action is governed by ERISA, 29 U.S.C. § 1001 *et seq.* However, ERISA

does not specify a standard of review applicable to actions brought by a plan participant alleging a denial of benefits.[5] *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Aetna asserts that the arbitrary and capricious deferential standard should apply because the Plan vests the sole discretion to determine eligibility for benefits and to construe the terms of the Plan to the Plan Administrator. In response, plaintiffs contend that a heightened scrutiny standard should apply because the Plan Administrator is operating under a conflict of interest.[6]

The Court finds that the policy grants discretion to the claims administrator to make decisions regarding benefits eligibility, and thus, the arbitrary and capricious standard applies. Under this standard, the Plan Administrator's interpretation was reasonable and consistent with the terms and goals of the Plan; thus, the decision will not be over-turned. In addition, the Court finds that a heightened arbitrary and capricious standard is not warranted since there is no record evidence that Aetna's Plan Administrator was operating under a conflict of interest.

1. *The arbitrary and capricious standard of review.*

In determining the appropriate standard of review, the Supreme Court in *Firestone* rejected the universal application of the arbitrary and capricious standard when reviewing an ERISA administrator's decision regarding benefits eligibility. Rather, applying principles of trust law, the *Firestone* Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or

fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone,* 489 U.S. at 115, 109 S.Ct. 948. The *Firestone* holding was interpreted by the Third Circuit in *Luby v. Teamsters Health, Welfare & Pension Trust Funds,* 944 F.2d 1176 (3d Cir.1991). Under *Luby,* where an administrator is granted discretionary authority to grant or deny benefits, the administrator's factual determinations as well as interpretations of the plan are reviewed under the arbitrary and capricious standard. *Id.* at 1183–84.

This discretionary authority need not be expressly granted. Rather, it may be implied from the policy's terms as a whole. *Id.* at 1180. Under the deferential arbitrary and capricious standard, a district court may overturn a claims administrator's decision only if it is " 'without reason, unsupported by substantial evidence or erroneous as a matter of law' " and " 'the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits.' " *Abnathya v. Hoffmann–La Roche, Inc.,* 2 F.3d 40, 45 (3d Cir.1993) (citing *Adamo v. Anchor Hocking Corp.,* 720 F.Supp. 491, 500 (W.D.Pa.1989)); *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 983 (6th Cir.1991); *Lucash v. Strick Corp.,* 602 F.Supp. 430, 434 (E.D.Pa.1984), *aff'd,* 760 F.2d 259 (3d Cir.1985). Therefore, the determination of the appropriate standard of review depends upon whether the terms of the plan granted the administrator the discretion to act as a finder of fact in assessing whether plaintiffs were eligible for salary continuation benefits. *See Mitchell v. Eastman Kodak Co.,* 113 F.3d

---

5. *See* 29 U.S.C. § 1132(a)(1)(B).

6. Plaintiffs have offered no record evidence to support the contention that the Plan Administrator is operating under a conflict of interest. Instead, plaintiffs simply argue a genuine issue of material fact exists regarding whether there is a conflict of interest. Pls.' Resp. at 6. Although, allegations of a conflict without

more is insufficient to raise a genuine issue of material fact, *see Kotrosits v. GATX Corp. Non–Contributory Pension Plan for Salaried Employees,* 970 F.2d 1165, 1173 (3d Cir.), *cert. denied,* 506 U.S. 1021, 113 S.Ct. 657, 121 L.Ed.2d 583 (1992), the Court will review both standards.

433, 438 (3d Cir.1997); *Luby*, 944 F.2d at 1180.

■ In this case, the language of the Plan afforded the Plan Administrator the discretion to determine eligibility for benefits and to construe the terms of Aetna's Plan. Specifically, section 3.1 of the Plan provides that "[t]he Company shall be the Administrator with the sole responsibility for the administration of the Plan." Aetna's Mot. for Summ.J., Ex. 1 to Ex. C ("Aetna Plan") at 12. In addition, section 3.2 grants the Administrator the power and the duty "to construe and interpret the Plan, decide all questions of eligibility, determine the status and rights of Employees, and determine the amount, manner and time of payments hereunder." Aetna Plan at 13. That same section further provides that "if there shall arise any misunderstanding or ambiguity concerning the meaning of any of the provisions of the Plan arising out of the administration thereof, the Administrator shall have the sole right to construe such provisions ... [and][t]he decisions of the Administrator with respect to any matter it is empowered to act on shall be made by its sole discretion based on the Plan documents and shall be final, conclusive, and binding on all persons." *Id.*

The clear and unambiguous language of the Plan provides authority to the Plan Administrator to construe and interpret the Plan in making all eligibility determinations. Thus, the arbitrary and capricious standard must be applied.

2. *Application of the arbitrary and capricious standard.*

■■ Under the arbitrary and capricious standard of review, a court must uphold an administrator's interpretation of a plan, even if it disagrees with it, so long as "the administrator's interpretation is rationally related to a valid plan purpose and is not contrary to the plain language of the plan." *Dewitt v. Penn–Del Directory Co.*, 106 F.3d 514, 520 (3d Cir.1997). "Simply put, under the arbitrary and ca-

pricious standard a court may not disturb a fiduciary's interpretation of the plan so long as it is reasonable." *Keating v. Whitmore Mfg. Co.*, No. 97–4463, 1998 WL 372457, at *1 (E.D.Pa. June 4, 1998). Under this standard and for the reasons set forth below, the Court finds that the Plan Administrator's decision to deny salary continuation and severance benefits was not arbitrary or capricious.

Although the Third Circuit has not adopted a test to determine whether a plan administrator's interpretation was arbitrary or capricious, other courts have applied a series of factors in determining whether a plan interpretation was reasonable. *Lockhart v. United Mine Workers of America 1974 Pension Trust*, 5 F.3d 74, 77–78 (4th Cir.1993). Those factors include: 1) whether the interpretation is consistent with the goals of the plan; 2) whether it renders any language in the plan meaningless or internally inconsistent; 3) whether it conflicts with the substantive or procedural requirements of ERISA; 4) whether the administrator has interpreted the provision at issue consistently; and 5) whether the interpretation is contrary to the clear language of the plan. *Id.; see also Moench v. Robertson*, 62 F.3d 553, 566 (3d Cir.1995) (applying same factors in the context of determining whether a fiduciary abused discretion by investing employee assets solely in employer securities), *cert. denied*, 516 U.S. 1115, 116 S.Ct. 917, 133 L.Ed.2d 847 (1996); *McCall v. Metropolitan Life Ins. Co.*, 956 F.Supp. 1172, 1181 (D.N.J.1996) (applying factors to administrator's decision to deny benefits to employees, pursuant to plan). An analysis of these factors further illustrates that the denial of benefits under the Plan was reasonable and not arbitrary or capricious.

The stated goal of the Plan is to "specify the terms on which [Aetna] may grant income replacement and other benefits to certain employees upon Termination of Employment." Aetna Plan at 1. Section 1.31 of the Plan explicitly defines when no

"Termination of Employment" occurs within the meaning of the Plan:

> No Termination of Employment shall be deemed to occur if (a) the Employer transfers an operation in which the Employee is or can be employed, transfers an Employee's function, sells, spins off or otherwise separates a part of the Employer or an Affiliate, and (b) no later than the date on which payments to the Employee under the Plan would otherwise commence, the Employee is offered employment or the opportunity to continue employment with the transferee or other successor entity, whether or not such offer or opportunity is accepted, whether or not such employment would be considered Comparable Employment if it were offered by the Employer or an Affiliate, whether or not relocation is required and whether or not less than all of an Employee's functions has been transferred. Moreover, an Employee will not have a Termination of Employment if the Employee fails to Cooperate in the selection process where operations are transferred to a new entity.

Aetna Plan at 6–7. Aetna has also produced uncontradicted evidence that shows that the goal of the Plan has developed over the years to avoid paying severance benefits in the situation where Aetna transfers an operation and the employee is offered the opportunity to continue employment with the transferee or successor entity, because in these instances the employee would not suffer a break in employment. *See* Aetna's Ex. D at ¶ 5.

Aetna has also presented uncontradicted evidence of two prior occasions where Aetna has ended its contractual relationship with another entity, but prior to the date severance and salary continuation benefits would otherwise commence under the Plan, the employees are offered the opportunity to continue their employment with the successor entity. The uncontradicted record evidence further shows that in each analogous situation, the Plan Administrator denied benefits to employees because they did not suffer a "termination of employment" within the meaning of the Plan.

For example, Aetna, pursuant to a contract with the federal government, administered the CHAMPUS program. *See* Aetna's Ex. D, ¶¶ 9–10. However, when Aetna was outbid by a competitor when the contract came for renewal, it arranged for the majority of its employees to be offered employment with the replacement contractor. *Id.* Similar to plaintiffs in this case, the employees who received an offer of employment were denied severance and salary continuation benefits. *Id.* ¶ 10.

Similarly, pursuant to a contract with the federal government, Aetna administered Medicare programs. *Id.* After some time, Aetna decided not to renew its contract with the government. However, Aetna did agree to help arrange for hundreds of Aetna employees to be offered employment with the various replacement contractors. *Id.* The employees who received an offer of continued employment were denied severance and salary continuation benefits when the Plan Administrator concluded that a termination of employment has not occurred.

Lastly, a review of the record evidence shows that the Administrator's interpretation of section 1.31 is in accordance with the plain language of the Plan.

The Court finds that the Plan Administrator's interpretation of the plan was reasonable, consistent with the terms and goals of the Plan, and consistent with prior interpretation. Plaintiffs have offered no record evidence to the contrary. Thus, this Court concludes that the Plan Administrator's decision was not arbitrary or capricious and the Court will therefore not disturb that interpretation.

### 3. *Conflict of Interest.*

■ Although the Court agrees with Aetna that the arbitrary and capricious standard applies in this case, the Court's inquiry does not end there. Plaintiffs ar-

gue that, even if the deferential standard of review applies, the Court should apply a heightened arbitrary and capricious standard since the Plan Administrator was laboring under a conflict of interest because "denying the Plaintiffs' salary continuation and severance benefits was the optimal course for Aetna...." Pls.' Resp. at 6–7.

The Supreme Court in *Firestone* noted that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone*, 489 U.S. at 115, 109 S.Ct. 948 (citing Restatement (Second) of Trusts § 187, Comment d (1959)). The Third Circuit has concluded if the "plaintiff has established the existence of sufficient facts to prove the administrator of an ERISA plan [has] a conflict of interest," then the court may apply a "modified arbitrary and capricious standard." *Kotrosits v. GATX Corp. Non-Contributory Pension Plan for Salaried Employees*, 970 F.2d 1165, 1173 (3d Cir.), *cert. denied*, 506 U.S. 1021, 113 S.Ct. 657, 121 L.Ed.2d 583 (1992). Under the modified standard, if a significant conflict of interest exists, then "the degree of deference afforded to decisions of plan administrators should be reduced...." *Id.*

However, "[t]he mere fact that an employer acts as the administrator of its own ERISA plan is not significant enough to warrant a heightened standard of review." *Keating*, 1998 WL 372457, at *2; *see also Stout v. Bethlehem Steel Corp.*, 957 F.Supp. 673, 691 (E.D.Pa.1997) (concluding that the heightened standard was not warranted where the only evidence of a conflict of interest was the fact that an employer acted as the administrator of its own ERISA plan). "While 'some degree of conflict inevitably exists where an employer acts as the administrator of its own employee benefits plan,' the conflict need not be significant enough to require the use of the modified arbitrary and capricious standard." *Id.* (citing *Abnath-*

*ya*, 2 F.3d at 45 n. 5). A heightened standard of review is not required when a company "incurs no direct expense as a result of the allowance of benefits, nor does it benefit directly from the denial or discontinuation of benefits." *Abnathya*, 2 F.3d at 45 n. 5. The Third Circuit, however, has found that a conflict of interest may exist in the following situations: (1) where the plan is unfunded, and the benefits come directly from the sponsor's assets, or (2) the plan is funded but the sponsor's contributions each year are determined by the cost of satisfying plan liabilities in the immediately preceding years. *Kotrosits*, 970 F.2d at 1173.

In *Nolen v. The Paul Revere Life Ins. Co.*, 32 F.Supp.2d 211 (E.D.Pa.1998), this Court addressed the issue of whether, because of an alleged conflict of interest, the Court must apply a heightened arbitrary and capricious standard of review to a claim administrator's decision to deny disability benefits. The plaintiff in *Nolen* argued that "the Court should apply a heightened arbitrary and capricious standard of review because defendant is laboring under a conflict of interest by acting as both the claims administrator and the insurance company who ultimately pays benefits to eligible participant." *Id.* at 215. This Court agreed and concluded that "there is an inherent conflict of interest when the same insurance company acts as both the insurer and the claims administrator because, when the claims administrator agrees to pay a participant's claim, a fortiori, the insurer incurs a direct expense." *Id.* at 216.

Plaintiffs have summarily asserted that Aetna's Plan Administrator was operating under a conflict of interest. Plaintiffs, however, have not offered any factual support that the plan is unfunded or that the plan is funded but the sponsor's contributions each year are determined by the costs of satisfying plan liabilities in the immediately preceding years. The record evidence shows that the Plan is funded from the general assets of the employers.

Aetna Plan at 15. Most importantly, Aetna contends, and plaintiffs have not offered any contrary evidence, that Aetna intended to charge Mercy for any severance benefits to be paid to plaintiffs pursuant to their contract. Thus, unlike the claim administrator in *Nolen*, Aetna would not directly benefit from the denial of salary continuation and severance benefits, nor would Aetna incur a direct expense as a result of the allowance of the benefits. From the evidence of record, this Court cannot conclude that the Plan Administrator was operating under a conflict of interest. Thus, the Court will not apply a heightened level of scrutiny.

### C. *Oral Modification and Equitable Estoppel.*

Plaintiffs argue that genuine issues of material fact exist regarding whether the statements made by Aetna representatives at the February 19, 1997 separation meeting constitute an oral modification of the Plan. In essence, plaintiffs assert that the statements made at the meeting amended Aetna's Plan and Aetna should be estopped from denying plaintiffs the benefits based on those representations. Aetna first contends that as a matter of law, a plan under ERISA may not be orally modified. In addition, Aetna asserts that plaintiffs cannot succeed on an equitable estoppel theory because they have not asserted a claim for equitable estoppel in their Amended Complaint, nor have they offered any evidence to support those allegations. Thus, Aetna argues that plaintiffs have failed to put forth any evidence from which a reasonable fact finder could find Aetna liable under an equitable estoppel theory and summary judgment must be granted in their favor.

### 1. *Oral Modification Under ERISA.*

■ Under Third Circuit law, it is well-settled that ERISA precludes an employer from making oral or informal modifications to employee benefit plans. *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d

1155, 1163 (3d Cir.1990). In concluding that ERISA plans cannot be modified based on oral modifications which are never reduced to writing, the court cited Section 402(a)(1) of ERISA. *Id.* The court found that "[s]ection 402(a)(1) of ERISA requires that 'every employee benefit plan shall be established and maintained pursuant to written instrument.'" *Id.* (citing 29 U.S.C. § 1102(a)(1)). Thus, the oral communications made at the meeting, as a matter of law, cannot modify Aetna's written plan.

### 2. *Equitable Estoppel.*

■ The Third Circuit, however, has recognized occasions where an employer can be held liable under ERISA in its fiduciary capacity for making affirmative misrepresentations on an equitable estoppel theory. *See Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235 (3d Cir.1994). "To succeed under this theory of relief, an ERISA plaintiff must establish (1) a material representation, (2) reasonable and detrimental reliance upon the representations, and (3) extraordinary circumstances." *Id.*

■ Plaintiffs do not allege the necessary elements to support a claim of equitable estoppel in their Amended Complaint, nor have they presented any evidence in their Response to Aetna's motion for summary judgment to support this theory. Plaintiffs simply argue that the events which occurred at the February meeting raise genuine issues of material fact which preclude summary judgment.

Even accepting as true plaintiffs' description of what occurred at the meeting, these sparse allegations do not raise a genuine issue of material fact which would preclude summary judgment. In fact, Aetna does not dispute plaintiffs' description of what occurred at this meeting, which are the only facts that constitute plaintiffs' equitable estoppel claim. It is undisputed that at the meeting, an Aetna representative explained to plaintiffs the following: that Aetna was ending its con-

tractual relationship with Mercy; Aetna did not know whether plaintiffs would receive a job with AmeriHealth/Mercy; that if each plaintiff did not receive a job with AmeriHealth/Mercy by the time the contractual relationship ended on March 31, 1997, they would be terminated by Aetna effective on that date; that in accordance with Aetna's employee handbook, even if a non-Aetna job was obtained by plaintiffs, Aetna would pay salary continuation and severance benefits if plaintiffs were terminated; and Aetna did not know if Ameri-Health/Mercy would obtain the necessary license by March 31, 1997.

Federal Rule of Civil Procedure 56(e) provides that "the adverse party's response [to a motion for summary judgment], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against adverse party." Fed.R.Civ.P. 56(e). In addition, the Supreme Court has recognized that "Rule 56(e) provides that judgment 'shall be entered' against the non-moving party unless affidavits or other evidence 'set forth specific facts showing that there is a genuine issue for trial.'" *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). "[T]he purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Id.* at 888–89, 110 S.Ct. 3177.

Plaintiffs have failed to meet this minimum burden. They have offered no record evidence to support their assertion that a genuine issue of material fact exists precluding summary judgment on their estoppel claim. Plaintiff have failed to allege any facts demonstrating detrimental reliance or "extraordinary circumstance" as required by Third Circuit law.

A review of Third Circuit cases describing what constitutes the "extraordinary circumstances" necessary for recovery under an equitable estoppel theory, illustrates the deficiencies in plaintiffs' allegations. The Third Circuit has never clearly defined "extraordinary circumstances," relying instead on case law to establish its parameters. *Kurz v. Philadelphia Elec. Co.,* 96 F.3d 1544, 1553 (3d Cir.1996) (citing *Curcio,* 33 F.3d at 235), *cert. denied,* —— U.S. ——, 118 S.Ct. 297, 139 L.Ed.2d 228 (1997). However, the Third Circuit has concluded that a plaintiff has made a showing of "extraordinary circumstances" when she shows affirmative acts of fraud or similar inequitable conduct by the employer. *Kurz,* 96 F.3d at 1553; *see also Rosen v. Hotel & Restaurant Employees & Bartenders Union,* 637 F.2d 592, 598 (3d Cir.) (holding that pension fund could not deny benefits to participant on grounds that participant's employer failed to pay required contributions where fund administrator allowed employee to pay contributions himself), *cert. denied* 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981). At other times, the Third Circuit has "focused on the network of misrepresentations that arises over an extended course of dealing between the parties." *Kurz,* 96 F.3d at 1553; *see also Smith v. Hartford Ins. Group,* 6 F.3d 131, 142 (3d Cir.1993) (suggesting extraordinary circumstances might exist where plaintiff repeatedly and diligently inquired about benefits and defendant repeatedly misrepresented scope of coverage to plaintiff). Lastly, the courts have examined the vulnerability of a plaintiff in determining whether extraordinary circumstances exist. *Id.* Plaintiffs have failed to alleged any facts similar to those which the Third Circuit concluded constitutes extraordinary circumstances. In addition, plaintiffs also have failed to present any facts that plaintiffs detrimentally relied upon any representations made by Aetna. As a result, summary judgment in favor of defendant must be granted.

An appropriate order follows.

534

## ORDER

AND NOW, this 30th day of March, 1999, upon consideration of defendant Aetna's motion for summary judgment (doc. no. 9) and plaintiffs' response thereto (doc. no 11), it is hereby ORDERED that:

1. Defendant Aetna's motion for summary judgment is GRANTED;

2. JUDGMENT is ENTERED in favor of defendant and against plaintiffs; and

3. Defendant's motion for leave to file a reply (doc. no. 12) is DENIED AS MOOT.

The clerk shall mark this case CLOSED.

AND IT IS SO ORDERED.